**Marjorie M. HUZJAK, Debra Huzjak, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. C86–2749Y.

United States District Court, N.D. Ohio, E.D.

Dec. 17, 1987.

Carl G. McMahon, Fred Weisman, Howard D. Mishkind, Weisman, Goldberg, Weisman & Kaufman, Cleveland, Ohio, for plaintiffs.

Carla D. Moore, Asst. U.S. Atty., Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION AND ORDER OVERRULING DEFENDANT'S MOTION TO COMPEL AUTHORIZATION

KRENZLER, District Judge.

Pending before the court is a motion by defendant United States of America to compel plaintiff Marjorie M. Huzjak ("Huzjak") to "execute an authorization permitting Cleveland Clinic Foundation personnel to fully discuss with defendant her medical condition and her medical treatment while a patient at the Clinic in 1983." In effect, defendant asks the Court to compel Huzjak to waive her physician/patient privilege with respect to doctors who treated the plaintiff at The Cleveland Clinic ("The Clinic").

### I. *Facts*

The plaintiffs, Marjorie M. Huzjak and Debra Huzjak, brought this personal injury suit, pursuant to the Federal Tort Claims Act, against the federal government. The action arose when Huzjak was injured as a result of a collision between a car in which Huzjak was a passenger and a United States Postal vehicle. Huzjak received treatment at The Clinic for injuries sustained in the accident. Huzjak was examined and treated by a number of physicians, including Dr. Patrick Sweeney, a neurologist at The Clinic.

The injuries sustained in the accident are the subject of the plaintiffs' personal injury suit against the federal government. After suit was filed by plaintiffs, discovery proceeded in the suit and Attorneys' Pretrial Statements were filed. The Attorneys' Pretrial Statements contained lists of those witnesses, both lay and expert, which each party intends to call at trial. The plaintiffs' Attorneys' Pretrial Statement indicates that Dr. Sweeney will not be called

upon to testify, and that Huzjak will be called. Additionally, during discovery, the plaintiffs provided defense counsel with a complete copy of Huzjak's Cleveland Clinic Hospital records.

After plaintiffs indicated they would not call Dr. Sweeney as a witness, defendant contacted Dr. Sweeney to interview him as a potential witness. Dr. Sweeney, after initially agreeing to speak with counsel for defendant, later decided to refuse such an interview. Counsel for The Clinic had advised Dr. Sweeney that consultation with the defendant might violate Huzjak's physician/patient privilege, absent a waiver from Huzjak. The instant motion arises out of Dr. Sweeney's refusal to speak with counsel for the defendant. Dr. Sweeney indicated he would cooperate with counsel for the defendant only after Huzjak waived her physician/patient privilege.

### II. *Arguments of the Parties*

Defendant filed the motion to compel Huzjak to execute a medical authorization for alternative reasons. First, defendant argues that Huzjak waived her physician/patient privilege by providing the defendant with a complete set of her medical records. Second, defendant argues that defendant should be able to complete discovery with regard to Dr. Sweeney in the event that Huzjak testifies as to her medical condition at trial, thereby waiving her physician/patient privilege under Ohio law. This argument is buttressed by the fact that Huzjak was listed in plaintiffs' Attorneys' Pretrial Statement as a trial witness, whereas Dr. Sweeney was not.

The plaintiff contends that no waiver of the physician/patient privilege has occurred. The plaintiff argues that discovery can only occur if Huzjak waives the privilege by one of the three prescribed methods of Ohio law. Ohio Rev. Code Ann. § 2317.02. These methods include express waiver, testimony at trial, or filing of a medical claim. Until Huzjak waives her privilege by one of these methods, most specifically by testifying at trial, discovery of any doctor who treated Huzjak is not

available and not discoverable to the defendant. The plaintiff argues that discovery of such a doctor, even under a protective order, must wait until Huzjak has actually waived her privilege by testifying at trial.

This matter came on for a hearing. Counsel for both plaintiffs and defendant presented arguments in favor of their respective positions.

Although at first glance it seems odd to have this kind of case at this time and on this motion, it is, in fact, a natural result of the present factual situation. Generally speaking, statistics show that a high percentage of all personal injury cases are settled by the parties prior to reaching trial. All parties, including the plaintiffs herein, know or should know that a defendant will not settle a case until in possession of the complete operative facts, including medical history. In the settlement context, plaintiffs usually willingly give such a waiver of privilege, thereby allowing discovery of treating doctors and experts, in order to proceed with settlement negotiations in an open and harmonious manner. Here, for whatever reason, no such harmonious relationship exists. Rather, the parties are engaged in highly adversarial and bare-knuckled skirmishing, with each side getting both tough and technical with the rules. With such a high volume of cases voluntarily engaging in full discovery, it is possible to forget the technical side of the rules. Thus, it is necessary to reiterate rules on discovery and evidence with regard to privilege, specifically, the physician/patient privilege.

III. *The Law of Privilege*

■ Under the Federal Tort Claims Act, the controlling law is that of the place where the acts giving rise to the cause of action occurred. 28 U.S.C. § 1346(b). *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed. 492 (1962). Thus, in the instant action Ohio law is controlling. The Ohio Revised Code provides that a waiver of the physician/patient privilege occurs only in three circumstances: (1) where there is an express waiver by the patient; (2) where the patient voluntarily testifies regarding privileged matters; and (3) where the patient files a "medical claim against a physician or hospital." Ohio Rev. Code Ann. § 2317.02. No implied waiver of the patient's privilege arises by virtue of the plaintiff having filed a lawsuit. *State, ex rel. Lambdin v. Brenton*, 21 Ohio St.2d 21, 24, 254 N.E.2d 681 (1970); *Urseth v. City of Dayton, Ohio*, 653 F.Supp. 1057, 1063 (S.D. Ohio 1986). Furthermore, no waiver of the physician/patient privilege arises where there is an exchange of the medical records. *Urseth*, 653 F.Supp. 1057. Thus, although Huzjak has provided the opposition with her medical records, she has not waived the physician/patient privilege.

■ Under the physician/patient privilege, a treating physician is prohibited from disclosing matters disclosed by the patient to the physician during consultations regarding treatment or diagnosis of the patient. The rationale of this privilege is to promote health by encouraging a patient to fully and freely disclose all relevant information which may assist the physician in treating the patient. *Floyd v. Copas*, 9 Chio Op.3d 298 (1977). If the patient feared that such information could be revealed by the treating doctor, the patient might refrain from, or be inhibited from, disclosing relevant information. The privilege is designed to provide an assurance of confidentiality.

The scope of the physician/patient privilege is limited and cannot be invoked in all circumstances. *Vincenzo v. Newhart*, 7 Ohio App.2d 97, 219 N.E.2d 212 (1966), *aff'd* 11 Ohio St.2d 63, 227 N.E.2d 627 (1967) (*per curiam*). The underlying rationale to assure the confidentiality of such communications necessarily limits the scope of privilege. Only those communications which occur within the physician/patient relationship are covered by the privilege. The subject matter of the privilege extends only to information acquired during the course of treatment or diagnosis. The patient must consult the physician for the purpose of treatment and make disclosures in confidence, not in the presence of

any third party. Due to this limited scope of the privilege, the treating physician is free to testify as to matters not within the scope of the privilege, even in the absence of a waiver. *Id.*

█ The treating physician is not rendered incompetent as a witness in a case involving his patient. Rather, the doctor is prohibited from testifying with regard to privileged matters. Nothing prevents the physician from testifying about non-privileged information. The physician may testify as an expert, even in the absence of a waiver. However, in the course of his testimony, the doctor may not testify with regard to any information he gathered during the confidential relationship. All information he gathered and any opinions derived therefrom must be ignored during his testimony. *Id. Moore v. Grandview Hospital,* 25 Ohio St.3d 194, 495 N.E.2d 934 (1986); *Strizak v. Indus. Comm.,* 159 Ohio St. 475, 112 N.E.2d 537 (1953).

The patient, not the physician, is the holder of the privilege and only the patient may invoke the privilege; thus, only the patient may waive the privilege.

## IV. *Interaction of Discovery and Privilege*

There is no question that the physician/patient privilege, preserving patient confidences, is engrained in our legal tradition. Nor is it questioned that the Federal Rules of Civil Procedure are designed to promote wide-open discovery. The discovery mechanism provides litigants with a means of obtaining the information required to fully and effectively litigate a cause of action. The scope of discovery is defined in the Rules very broadly.

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... It is not grounds for objection that the information sought will be inadmissible at the trial if the information sought is reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). As specified in the Rules, privilege prevents the full exchange of all relevant information between the parties. It is precisely this tension which gives rise to the present controversy. The question is how to reconcile these conflicting policies.

Many different conclusions can be drawn in this area including, but not limited to, the following. At one extreme, the privilege between a physician and patient is so important that, absent an actual waiver, there is no waiver until the plaintiff takes the stand to testify. At the other extreme, favoring full and open discovery, the plaintiff is deemed to have waived the privilege upon commencement of the lawsuit. A third view, falling between the extremes, permits discovery of privileged material after the lawsuit is filed under a protective order which prohibits use of the material until the plaintiff, upon testifying at trial, actually waives the privilege.

█ Based upon the facts in the instant case and the law, the Court concludes that the privileged materials will be discoverable under a protective order indicating that the material may not be used until an actual waiver of the physician/patient privilege occurs. Under this rule, the substance of the privilege will be protected through the imposition of a protective order. At the same time, the trial will not be disrupted by requests for discovery if and when the privilege is waived. Not only will the policies underlying the physician/patient privilege be protected, but also the swift and efficient adjudication of the case will be ensured.

A party may not assert the physician/patient privilege merely as a means to circumvent the discovery process. One of the primary goals of the Federal Rules of Civil Procedure is to avoid unfair surprise to the litigants at trial by affording all litigants with an opportunity to obtain all relevant information regarding their case. To allow a plaintiff to shield information during discovery and then utilize the information at trial would result in manifest injustice. *Mariner v. Great Lakes Dredge & Dock Company,* 202 F.Supp. 430 (N.D. Ohio 1962). "The privilege was never intended, however, to be used as a trial tactic by

which a party entitled to invoke it may control to his advantage the timing and circumstances of the release of information he must inevitably see revealed at some time." *Doe v. Eli Lilly & Company, Inc.,* 99 F.R.D. 126, 128 (D.D.C.1983). Invocation of the privilege so as to shield relevant information during discovery only to waive the privilege at trial will frustrate attempts by the opposition to prepare for trial and will adversely affect the opposition's ability to cross-examine the witness. Manipulation of the privilege in this manner is clearly contrary to the goals of the Federal Rules of Civil Procedure and in no way further the goals underlying the privilege.

Another factor to be considered in evaluating whether to allow discovery of privileged material is the likelihood or probability that the plaintiff will actually waive the privilege at trial. If waiver of the privilege at trial is inevitable or seems "reasonably probable," discovery of the privileged matter prior to the actual waiver should be permitted. *Burlage v. Haudenshield,* 42 F.R.D. 397 (N.D. Iowa 1967). No justification for delaying discovery exists if waiver is reasonably probable. Such delay would seriously undermine the opportunity of the opposition to effectively prepare for trial and is likely to interrupt the smooth progression of the trial. Although the privileged information will be discoverable prior to actual waiver, the use of any privileged information, or of any information gained therefrom, will be strictly prohibited until actual waiver occurs. Discovery of the privileged material is merely advanced from the time of actual waiver at trial to the discovery period. Particularly where it is reasonably probable that the plaintiff will waive the privilege, no prejudice will result from pretrial discovery. Rather, it will allow both litigants an opportunity to be fully prepared. In the event that the plaintiff does not waive the privilege, the effect will be as if discovery of the privileged material never occurred.

The rule allowing discovery of privileged material prior to an actual waiver will also extend to the situation where the plaintiff is treated by a number of doctors, but only calls one to testify. The opposition may take discovery of all such treating physicians, but use of the discovered information is conditioned on plaintiff's waiver of the privilege at trial. The waiver attaches when the plaintiff voluntarily testifies, not when the plaintiff chooses not to call certain treating physicians. This rule will allow defendant to be prepared for such a waiver and avoid the necessity of delaying the trial until defendant is prepared.

A different rule will be applied, however, where the plaintiff consults a physician, not for purposes of treatment, but for expert testimony only. In this circumstance, the physician/patient privilege would not attach and the rules governing use of expert witnesses would apply.

Because a treating physician is cloaked with privilege, defendant will be unable to circumvent the rules of privilege by purporting to call such a treating physician as an expert witness.

Defendant is faced with a harsh rule only when the plaintiff elects not to testify at trial. Then, defendant is precluded from using any materials gathered through the discovery of the privileged witness, because no waiver attaches. However, the harshness of the rules to the defendant is offset by the plaintiffs' inability to raise these same privileged matters.

## V. *Application*

In the present case, the physician/patient privilege attached to that information which Dr. Sweeney gathered from Huzjak during the course of their professional relationship. No pretrial waiver of the physician/patient privilege has yet occurred. However, it seems reasonably probable that Huzjak will waive the privilege while litigating her cause of action under the Federal Tort Claims Act. Thus, there is little utility in preventing the defendant from discovering material which is likely to be revealed. Discovery of Dr. Sweeney may proceed under a protective order indicating that any privileged matters disclosed by Dr. Sweeney and any material ascertained therefrom may not be used by the defendant at trial until such time as Huzjak

actually waives the physician/patient privilege by voluntarily testifying about her medical condition. Although the defendant is free to take discovery of Dr. Sweeney, subject to a protective order, this Court is not in any way ordering Dr. Sweeney to cooperate with the defendant. Dr. Sweeney is not compelled to consult with the defendant nor to be a witness for the defendant. He may exercise his discretion in deciding such a matter.

The instant case presents a unique situation in that Dr. Sweeney is a hybrid doctor. Huzjak consulted him as a treating physician, but has elected to not call him as a witness, and the defendant indicates it would like access to Dr. Sweeney to determine if he could be useful as an independent expert. Depending upon the viewpoint used, the plaintiffs' or the defendant's, to characterize the relationship, a different set of rules will attach. Here, the privileged relationship initially established by plaintiffs must be given credence and will remain until such privilege is waived. The fact that plaintiffs choose not to use Dr. Sweeney at trial and the defendant would like to use him as an expert will not change Dr. Sweeney's character as a witness protected by privilege to that of an independent expert. Defendant may have access to Dr. Sweeney under normal discovery rules, subject to a protective order. Once waiver attaches at trial, the defendant is free to use Dr. Sweeney as an independent expert. The same logic would apply if defendant had established a physician as an independent expert and plaintiffs approached such a physician for purposes of treatment in order to create a privilege. The privilege would not be triggered because of the physician's preexisting relationship with the defendant.

## VI. *Conclusion*

The Court concludes that the mere filing of a lawsuit is not an implied waiver of the physician/patient privilege. In addition, the Court determines that it is impractical and disruptive to require that a litigant wait until actual waiver of privilege at trial to complete discovery. Rather, this Court adopts the rule that a litigant may proceed with the discovery of privileged material prior to trial, subject to a protective order prohibiting the use of this material or any material derived therefrom, until such time as the privilege has actually been waived.

The party seeking discovery of the treating physician must proceed under a two-step procedure. First, the party must make a request for discovery directly to the physician. If the physician refuses to comply with the discovery request on the basis of privilege, the discovering party must then file a motion to compel discovery with the Court. If the Court grants the motion to compel subject to a protective order on the basis that the plaintiff has waived the privilege or that waiver is reasonably probable at trial, the physician will be required to cooperate with the discovering party and provide the requested information. On the other hand, if a party wants to consult a physician legitimately as an expert rather than as subterfuge to gather privileged information from a treating physician, the doctor may exercise his discretion with regard to whether he will assist the discovering party.

Accordingly, the Court overrules defendant's motion to compel Huzjak to execute an authorization. However, the discovery of Dr. Sweeney may proceed subject to the limitations set forth in this opinion and the rules of discovery.

IT IS SO ORDERED.