**David J. CANFIELD, Jr., Appellant
(Defendant Below),**

v.

**Melvin H. SANDOCK and Betty J. Sandock, Appellees (Plaintiffs Below).**

No. 71A03–8709–CV–00247.

Court of Appeals of Indiana,
Third District.

April 14, 1988.

As a result of an automobile-pedestrian accident on October 23, 1986, Melvin and Betty Sandock filed a complaint for negligence against Canfield alleging that Melvin "suffered temporary and permanent physical injury, temporary and permanent pain and suffering, mental suffering, medical expenses and economic loss." (R. 3.) The complaint also alleged that Betty suffered a loss of consortium. (Id.)

Through interrogatories, Canfield discovered the names of the physicians who treated Melvin for the injuries he sustained in the accident. Canfield then sent to each of the named treating physicians requests for production of documents and subpoenas duces tecum pursuant to Indiana Rules of Procedure, Trial Rule 34(C).[1] A copy of each request and subpoena was also sent to Sandocks' attorney.

Sandocks countered these requests with a motion to quash the subpoenas and a protective order to prevent the production of the requested documents. The trial court granted the protective order, quashed the subpoenas, and granted attorneys' fees to Sandocks' counsel.

Robert J. Palmer, Arthur A. May, May, Oberfell & Lorber, South Bend, for appellant.

Robert F. Gonderman, Jr., Gonderman Law Offices, P.C., South Bend, for appellees.

STATON, Judge.

David J. Canfield appeals the trial court's order awarding attorneys' fees as a sanction resulting from a discovery dispute. The underlying discovery order quashing subpoenas duces tecum and requests for production of documents was certified for appeal. The two interlocutory appeals have been consolidated and raise the following issues:

1) Whether the trial court abused its discretion in quashing the subpoenas duces tecum and requests for production.

2) Whether the trial court abused its discretion by imposing sanctions.

Reversed and remanded.

## I.

### *Discovery*

Canfield raises the issue whether the trial court abused its discretion in quashing the subpoenas duces tecum and requests for production of documents. Canfield requested

---

1. That rule provides:

(C) Application to Non-parties. A witness or person other than a party may be requested to produce or permit the matters allowed by subdivision (A) of this rule. Such request shall be served upon other parties and included in or with a subpoena served upon such witness or person. The request shall contain the matter provided in subdivision (B) of this rule. It shall also state that the witness or person to whom it is directed is entitled to security against damages or payment of damages resulting from such request and may respond to such request by submitting to its terms, by proposing different terms, by objecting specifically or generally to the request by serving a written response to the party making the request within thirty [30] days, or by moving to quash as permitted by Rule 45(B). Any party, witness or person upon whom the request properly is made may respond to the request as provided in subdivision (B) of this rule. If the response of the witness or person to whom it is directed is unfavorable, if he moves to quash, if he refuses to cooperate after responding or fails to respond, or if he objects, the party making the request may move for an order under Rule 37(A) with respect to any such response or objection. In granting an order under this subdivision and Rule 37(A)(2) the court shall condition relief upon the prepayment of damages to be proximately incurred by the witness or person to whom the request is directed or require an adequate surety bond or other indemnity conditioned against such damages. Such damages shall include reasonable attorneys' fees incurred in reasonable resistance and in establishing such threatened damage or damages.

a copy of each and every document contained within your file pertaining to plaintiff Melvin H. Sandock. Mr. Sandock's home address is 1528 Wildflower Way, South Bend, Indiana. Mr. Sandock's date of birth is April 2, 1921. This request includes, but is not limited to, copies of any and all physician's notes, nurse's notes, clinical reports, hospital reports, laboratory reports, questionnaires completed by the patient, and any other document contained within your file.

(Appellant's Brief, Appendix). In support of their motion to quash and for protective order, Sandocks argued that the requests and subpoenas violated the physician-patient privilege and sought material beyond the scope of discovery.[2]

■ One of the underlying questions in this case is whether T.R. 34(C) is a proper vehicle for discovery of medical records from a party's treating physician. The physician-patient privilege was statutorily created to prevent physicians from testifying "as to matters communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases...." I.C. 34-1-14-5. Because T.R. 26(B) limits the scope of discovery to non-privileged matters, apparently medical records are not discoverable absent a waiver of the privilege by the patient. In Indiana, where a party-patient puts in issue his physical or mental condition by way of claim, counter-claim or affirmative defense, he waives his privilege as to all matters either causally or historically related to the condition he has put in issue. *Collins v. Bair* (1971), 256 Ind. 230, 268 N.E.2d 95, 101. Thus, as suggested by the court in *Collins,* T.R. 26(B) does not prevent discovery of matters causally or historically related to the condition put in issue.

By putting the condition in issue, discovery is made possible by virtue of Trial Rule 26(B), the matter no longer being privileged.

If discovery is thus in fact attempted and the party-patient from whom discovery is sought considers the inquiry a mere "fishing expedition" into matters unrelated either causally or historically and therefore irrelevant to the condition he has put in issue, he may seek a protective order from the court pursuant to Trial Rule 26(C).

*Id.* 268 N.E.2d at 100–101 (footnotes omitted).

■ Although Sandocks concede that matters as to which the privilege has been waived are discoverable, they urge us to hold that T.R. 34(C) may not be used to discover medical records from the physician because the possibility exists that the physician will turn over records that may include privileged information and the party-patient will not have an opportunity to object and assert his privilege. While this is a legitimate and important concern, the trial rules themselves protect against such an occurrence. T.R. 34(C) requires that a copy of a request for production propounded to a non-party be served upon other parties. It is easy to imagine instances where notice may not be sent to or received by a party in time to object to the discovery on the basis of privilege; however, we do not believe that possibility alone is sufficient reason to carve out an exception to T.R. 34(C) for treating physicians. The rule contemplates a cooperative atmosphere between parties without resort to the courts. *See Subpoena Duces Tecum to Stearns v. Zulka* (1986), Ind.App., 489 N.E.2d 146, 148. Recognizing an exception to non-party production requests for fear attorneys may abuse the procedure would undermine the objective of the trial rule. Appropriate action can be taken in the instances where abuse occurs.

The conclusion that T.R. 34(C) may be used to request medical records directly from the treating physician does not resolve the issue presented. A problem arises when, as in the present case, a party

---

**2.** T.R. 26(B) provides, in pertinent part:

(B) Scope of Discovery. Unless otherwise ordered by the court in accordance with these rules, the scope of discovery is as follows:

(1) *In General.* Parties may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject-matter involved in the pending action. (Our emphasis.)

makes a request for medical information from the treating physician and the opposing party-patient objects on the basis of privilege because not all of the material in the hands of the physician is related to the condition put in issue.

Thus, we are faced with a situation where part of the request is permissible because the privilege has been waived and part of the request is impermissible because some of the material is still privileged and beyond the scope of discovery. The solution appears simple: allow discovery of all material related to the condition put in issue and grant a protective order preventing discovery of any material as to which the privilege still attaches. This leads us to the other underlying question in this case. How is it determined whether the privilege has been waived as to the requested material? Obviously, the trial court must ultimately make that determination.

Sandocks urge us to hold that the proper procedure is for the trial court to examine *in camera* the records claimed to be privileged and then allow the party requesting discovery to have those records the court determines are not privileged. The drawback with this procedure lies in the unique technical nature of medical information. It is not practical to assume a trial judge has such a high degree of medical knowledge to know what portions of a medical history might bear on the condition at issue without the benefit of expert opinion. This is especially true where, as here, the pleadings refer to the condition in such general terms as "physical injury" and "mental suffering."

The alternative is to let the party seeking discovery have access to the disputed matters and hold a hearing where the trial court can hear argument and expert opinion from both parties as to whether the material bears a causal or historical relation to the condition in issue and is no longer privileged. At first glance, this alternative seems ridiculous in the context of a discovery dispute because the defendants are being given the material in order to make an argument that they are entitled to discover the material.

However, when we shift our focus of concern, we see that this procedure is not at all ridiculous. As noted above, the physician-patient privilege was created by statute to prohibit physicians from *testifying* about confidential communications with a patient.

> The privilege has been justified on the basis that its recognition encourages free communications and frank disclosure between patient and physician which, in turn, provide assistance in proper diagnosis and appropriate treatment. To deny the privilege, it was thought, would destroy the confidential nature of the physician-patient relationship and possibly cause one suffering from a particular ailment to withhold pertinent information of an embarrassing or otherwise confidential nature for fear of being publicly exposed.

*Collins, supra* 268 N.E.2d at 98. Thus, the privilege is designed to prevent *public* disclosure of physician-patient confidences without the consent of the patient. The discovery process, however, is not public. It is the exchange of information between the parties to the lawsuit. By allowing *discovery* of arguably privileged medical information, the policy behind the privilege is not being thwarted. Of course, to insure that any material that ultimately is determined to be privileged remains protected, the trial court should allow discovery under a protective order limiting who has access to the materials and how they may be used.

Allowing discovery of the privileged material will enable the trial court to have the benefit of arguments from both parties before determining whether certain material is related to the condition put in issue. If the court finds that the material is privileged, it will not be admissible at trial. To ensure that the privileged material will not be used at trial, the party-patient can make a motion in limine to prevent the opposing party from making any reference to the material.[3]

---

**3.** We recognize the potential abuse of information received in this fashion if ultimately the

We find support in federal court decisions for allowing discovery of material protected by the physician-patient privilege. In *Urseth v. City of Dayton, Ohio* (S.D. Ohio 1986), 653 F.Supp. 1057, the court allowed defendants to discover the medical records of the decedent in a wrongful death action where it was apparent that at least one medical condition of the decedent played a role in his death.

The Court notes that the Federal Rules of Civil Procedure contemplate full disclosure of the facts in order to allow the parties to fully prepare for trial. This Court recognizes, albeit, reluctantly, that Plaintiff has not yet waived the physician-patient privilege which pertains to the medical records of James H. Urseth.[4] Nonetheless, in this Court's view, and in the view of other federal courts which have faced the issue, disclosure of this privileged material prior to trial should be allowed in this case, given the policy of the federal rules and the high probability that Plaintiff will waive the physician-patient privilege at the trial upon her wrongful death action. *Parrett v. Ford Motor Company*, 47 F.R.D. 22, 24 (W.D.Mo.1968); *Burlage v. Haudenshield*, 42 F.R.D. 397, 398 (N.D. Iowa 1967); *Cf. Mariner v. Great Lakes Dredge and Dock Company*, 202 F.Supp. 430, 434 (N.D. Ohio 1962); *Awtry v. United States*, 27 F.R.D. 399, 402 (S.D.N.Y.1961).

*Id.* at 1066.

Likewise, in *Huzjak v. U.S.* (N.D. Ohio 1987), 118 F.R.D. 61, the court allowed discovery of privileged medical information.

As specified in the Rules, privilege prevents the full exchange of all relevant information between the parties. It is precisely this tension which gives rise to the present controversy. The question is how to reconcile these conflicting policies.

Many different conclusions can be drawn in this area including, but not limited to, the following. At one extreme, the privilege between a physician and patient is so important that, absent an actual waiver, there is no waiver until the plaintiff takes the stand to testify. At the other extreme, favoring full and open discovery, the plaintiff is deemed to have waived the privilege upon commencement of the lawsuit. A third view, falling between the extremes, permits discovery of privileged material after the lawsuit is filed under a protective order which prohibits use of the material until the plaintiff, upon testifying at trial actually waives the privilege.

Based upon the facts in the instant case and the law, the Court concludes that the privileged materials will be discoverable under a protective order indicating that the material may not be used until an actual waiver of the physician/patient privilege occurs. Under this rule, the substance of the privilege will be protected through the imposition of a protective order. At the same time, the trial will not be disrupted by requests for discovery if and when the privilege is waived. Not only will the policies underlying the physician/patient privilege be protected, but also the swift and efficient adjudication of the case will be ensured.

*Id.* at 64.

We see no significant difference in allowing discovery of privileged material in order to prepare a case in the event the privilege will be waived and allowing discovery to facilitate the determination whether the privilege has been waived for purposes of trial. In both circumstances discovery

will allow both litigants an opportunity to be fully prepared. In the event that the plaintiff does not waive the privilege, the effect will be as if discovery of the privileged material never occurred.

*Id.* at 65.

For the foregoing reasons, we conclude that the trial court abused its discretion in

---

material is found to be irrelevant to the condition at issue. We note, however, that any violation of the court order will subject the attorney to contempt of court.

**4.** Under Ohio law, the party-patient does not waive his privilege until he testifies about his medical condition.

ordering that Canfield not have discovery of Sandocks' medical records.

## II.

### *Attorneys' Fees*

Canfield also raises the issue whether the trial court abused its discretion in awarding attorneys' fees as a sanction. The trial court order Canfield to pay $200.00 in attorneys' fees to Sandocks' counsel as a sanction in the underlying discovery dispute. T.R. 26(C), covering protective orders, provides that

[t]he provisions of Trial Rule 37(A)(4) apply to the award of expenses incurred in relation to the motion.

T.R. 37(A)(4) provides, in part:

If the motion is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

If the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

Because we conclude the motion for protective order and to quash subpoenas was improperly granted, we conclude that the trial court abused its discretion in awarding attorneys' fees as a sanction against Canfield.

Reversed and remanded for further proceedings consistent with this opinion.

GARRARD, P.J., and HOFFMAN, J., concur.