**GARRETT, Appellant,**

**v.**

**JEEP CORPORATION, Appellee, et al.**

[Cite as *Garrett v. Jeep Corp.* (1991), 77 Ohio App.3d 402.]

Court of Appeals of Ohio,
Lucas County.

No. L–90–276.

Decided Sept. 30, 1991.

*Mark S. Lindberg,* for appellant.

*Robert J. Gilmer, Jr.,* for appellee.

ABOOD, Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas which, following a jury verdict in favor of appellee, ordered that appellant, Alford S. Garrett, is not entitled to participate in the Workers' Compensation Fund. Appellant sets forth two assignments of error:

"A. The Lucas County Court of Common Pleas erred in granting defendant's motion for a discovery deposition of plaintiff's expert.

"B. The Lucas County Court of Common Pleas erred by misapplying current law denying plaintiff's motion for summary judgment."

The facts that are relevant to the issues raised by this appeal are as follows. On December 21, 1985, appellant sustained an injury in the course of and arising out of his employment with appellee, Jeep Corporation. Appellant filed an application for workers' compensation benefits with the Bureau of Workers' Compensation and the Industrial Commission of Ohio ("commis-

sion") and appellee certified the claim for an injury to the left knee. On November 4, 1987, the commission granted an amendment to the claim for the additional conditions of "contusion right knee and chondromalacia left patella." On May 17, 1988, the district hearing officer granted an additional allowance for "substantial aggravation of pre-existing bilateral patellofemoral arthritis." The Toledo Regional Board of Review affirmed the order of May 17, 1988 and the commission refused further appeal. On March 27, 1989, appellee filed a notice of appeal from the decision of the commission, pursuant to R.C. 4123.519, to the Lucas County Court of Common Pleas and, on April 26, 1989, appellant filed a complaint alleging the right to participate in the Workers' Compensation Fund for the additional condition of "substantial aggravation of pre-existing bilateral patellofemoral arthritis."

On December 19, 1989, appellee filed a notice to take the discovery deposition of appellant's treating physician, Robert L. Kalb, M.D., and a motion to compel appellant to permit this deposition. On December 22, 1989, appellant filed a motion for a protective order prohibiting appellee from taking Dr. Kalb's deposition. On January 2, 1990, the trial court granted appellee's motion, denied appellant's motion, ordered that the discovery deposition of Dr. Kalb take place as scheduled and further ordered that appellant:

" * * * specifically authorize Dr. Kalb to disclose otherwise privileged information for the purpose of said discovery deposition.

"In so ruling, this Court stresses that this specific authorization, in and of itself, does not constitute a waiver of the physician/patient privilege; and, in fact, this Court reserves ruling as to whether the past conduct of [appellant] constituted such a waiver."

On February 1, 1990, appellee took the discovery deposition of Dr. Kalb. On February 15, 1990, appellant took a video-taped deposition of Dr. Kalb for use at trial, which tape was filed with the trial court on February 20, 1990.

On February 20, 1990, appellant filed a motion for summary judgment which claimed that he was entitled to judgment on two grounds: (1) that the video-taped deposition of Dr. Kalb establishes an aggravation of a pre-existing condition, and (2) that appellee had explicitly allowed the condition of substantial aggravation of pre-existing bilateral patellofemoral arthritis prior to the May 17, 1988 order of the district hearing officer and that such an allowance by a self-insured employer is conclusive. Attached to appellant's motion for summary judgment were appellee's responses to requests for admissions and certain uncertified copies of documents that had been filed with the commission during the administrative proceeding on appellant's claim which set forth that, over approximately a two-year period, appellee had authorized and paid for three surgeries and various medical treatments and bills and had made

disability payments to appellant. Among those documents were (1) the forms for disability compensation, most of which indicated a diagnosis of "left knee chondromalacia patella/bilateral OA in knees"; (2) the forms authorizing surgery, which indicated diagnoses of "right knee internal derangement," "osteoarthritis, left knee, chondromalacia patella" and "internal derangement, left knee with severe patellofemoral osteoarthritis"; and (3) the forms authorizing payment for treatment, which indicated diagnoses of "patellofemoral osteoarthritis, left knee" and "internal derangement, right knee with recurrent effusion; internal derangement, left knee with severe patellofemoral osteoarthritis." In its answers to requests for admissions, appellee admitted that it had paid all medical and workers' compensation benefits for the three surgeries, that "on 12–18–86 it authorized surgery on Bureau form C–161, which notes diagnosis of internal derangement left knee with severe patellofemoral osteoarthritis," and that it "voluntarily paid temporary total disability benefits from 2/17/86 to 5/24/87 per C–174."

On March 9, 1990, appellee filed a motion for summary judgment, a memorandum in opposition to appellant's motion for summary judgment and a transcript of the discovery deposition taken of Dr. Kalb on February 1, 1990. In its memorandum, appellee disputed Dr. Kalb's testimony as set forth in his trial deposition by the use of his discovery deposition and objected to the use of the uncertified commission documents that were attached to appellant's motion for summary judgment as not being in compliance with Civ.R. 56(C) and (E). Appellee did not otherwise dispute that it had paid compensation and benefits as recited in appellant's motion for summary judgment.

On March 22, 1990, appellant filed his response to appellee's motion for summary judgment and a reply to appellee's memorandum in opposition to its motion for summary judgment, attaching several more commission documents. These documents, entitled "Self Insured Semi–Annual Report Of Claim Payments" (Form C–174), contained information as to the compensation paid to appellant, the period of disability for which the compensation was paid and the conditions allowed in the claim. Each report is signed by the employer directly beneath the wording:

"By signing below, I do hereby certify that the above payments have been issued to the claimant and/or service provider(s). I have the authority to execute this Employers Report and certify that the information contained herein is correct to the best of my information and belief."

Each report, beginning with the reporting period ending November 30, 1987 through the reporting period ending May 31, 1989, indicates that the "claim is allowed for: KNEES, CONT/L CHONROMAL, OSTEOARTHRITIS, DERRANGEM"; that appellee paid physician fee bills, hospital bills and other

medical expenses; and on the reporting period form ending November 30, 1987 and May 31, 1988, that temporary total disability compensation was paid "from 5/25/87 to 11/22/87" and "from 02/17/86 to 12/20/87" and "11/23/87 to 4/20/88," respectively. Also attached to appellant's reply memorandum are two affidavits of Mark S. Lindberg, Esq. in which he states that the firm with which he is associated was the counsel of record through the administrative process of appellant's workers' compensation claim and that the documents which were attached to the previous motions for summary judgment, as well as those attached to the reply, are true and accurate copies of documents contained in the Industrial Commission's file or supplied by appellee in response to discovery requests.

On May 14, 1990, appellee filed a reply memorandum in which it argued that the new documentation and the affidavits of counsel are not in compliance with Civ.R. 56. Appellee did not otherwise dispute that it certified osteoarthritis of the knees as a condition allowed in the claim or that it paid compensation and benefits based on such condition.

On May 14, 1990, the trial court denied both motions for summary judgment, finding that:

"The Court notes that neither Garrett nor Jeep has seen fit to indicate when Garrett applied for the additional allowance for the aggravation or when Jeep moved in opposition to such allowance * * * it cannot be said that reasonable minds can only conclude that Jeep did not timely contest the additional allowance. Accordingly, summary judgment must be denied on this ground. * * *

"* * * the conflict in Dr. Kalb's testimony clearly produces a disputed material question of fact. Accordingly, summary judgment must be denied on this ground."

On July 16, 1990, the case proceeded to trial by jury. On July 17, 1990, the jury rendered a verdict in favor of appellee and, on August 6, 1990, the trial court filed its judgment entry incorporating the jury verdict. Appellant has filed a timely appeal.

## I. DISCOVERY DEPOSITION OF DR. KALB

In his first assignment of error, appellant contends that the trial court erred in denying his motion for a protective order and in compelling the discovery deposition of Dr. Kalb and that, without such discovery deposition, there is no evidence upon which reasonable minds could conclude that appellant did not suffer a work-related symptomatic aggravation of pre-existing bilateral patellofemoral arthritis. In support, appellant argues that he did not waive his

physician/patient privilege and that appellee failed to show undue hardship in obtaining the facts known or opinions held by Dr. Kalb.

Appellee responds: (1) the trial court's order of January 2, 1990 was a final appealable order to which appellant failed to file a timely appeal; (2) appellant failed to attach a copy of the January 2, 1990 judgment entry to his notice of appeal in violation of App.R. 3(C) and Loc.App.R. 3(A); (3) appellant waived any objection he had by failing to object to the use of the discovery deposition during trial; (4) the court's discovery order is not erroneous as it ordered *disclosure*, not *waiver*, of privileged information, and appellant's opposition to discovery was a disingenuous attempt to manipulate the physician/patient privilege to gain an unfair advantage at trial; and (5) if erroneous, the trial court's order was not prejudicial because appellant subsequently waived his physician/patient privilege by himself taking the deposition of Dr. Kalb for use at trial.

Appellant replies: (1) he did not fail to timely appeal the January 2, 1990 discovery order or waive his right to object because he noted a continuing objection on the record at the commencement of Dr. Kalb's deposition and a denial of a motion for summary judgment is reviewable on appeal from the ensuing adverse final judgment; (2) the failure to attach the January 2, 1990 judgment entry did not confuse or mislead appellee; (3) the premature compelled waiver of the physician-patient privilege is not justified on the basis that a party may waive the privilege at some future time and there is no showing that appellant was using the privilege to circumvent the discovery process; and (4) the trial court's order was prejudicial because of the use of certain misleading statements obtained during the discovery deposition which were argued to the jury in an effort to cast doubt upon Dr. Kalb's credibility.

The issue presented by appellant's first assignment of error is whether the trial court erred in either ordering Dr. Kalb to submit to a pre-trial discovery deposition or in allowing such deposition testimony to be used in opposition to appellant's motion for summary judgment.

Civ.R. 26(B)(1) provides that:

"Parties may obtain discovery regarding any matter, *not privileged* * * *." (Emphasis added.)

"Under the physician/patient privilege, a treating physician is prohibited from disclosing matters disclosed by the patient to the physician during consultation regarding treatment or diagnosis of the patient." *Huzjak v. United States* (1987), 118 F.R.D. 61, 63; R.C. 2317.02(B). He is also prohibited from disclosing the history of the previous health of the patient. *Good-*

*year Tire & Rubber Co. v. Motz* (1935), 19 Ohio Law Abs. 14, paragraph two of the syllabus.

▆▆▆▆ The privilege may be waived by the patient:

"(1) where there is an express waiver by the patient;

"(2) where the patient voluntarily testifies regarding privileged matters; and

"(3) where the patient files a 'medical claim against a physician or hospital.' No implied waiver of the patient's privilege arises by virtue of the plaintiff having filed a lawsuit." (Citations omitted.) *Huzjak, supra,* at 63.

Although a patient who is a party to a lawsuit does not waive the privilege by producing medical reports or hospital records pursuant to Civ.R. 16, he does waive the "provisions of the statute relative to privileged communications so far as it pertains to the attending physician * * * [by] calling such physician as a witness." *Indus. Comm. v. Willoughby* (1936), 21 Ohio Law Abs. 588, at the syllabus.

▆▆▆ Prior to waiver, under certain circumstances and to prevent surprise, discovery may be had of the treating physician, but such information may not be used until actual waiver occurs.

"If waiver of the privilege at trial is inevitable or seems 'reasonably probable', discovery of the privileged matter prior to the actual waiver should be permitted * * *. Although the privileged information will be discoverable prior to actual waiver, the use of any privileged information, or of any information gained therefrom, will be strictly prohibited until actual waiver occurs." *Huzjak, supra,* at 65.

"Under the discovery provisions of the Ohio Civil Rules, the court has a discretionary power not a ministerial duty." *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 63 O.O.2d 88, 295 N.E.2d 659, paragraph one of the syllabus, and " * * * the same will not be disturbed unless an abuse of discretion affirmatively appears." *S.S. Kresge Co. v. Trester* (1931), 123 Ohio St. 383, 175 N.E. 611, paragraph three of the syllabus.

▆▆▆▆ Upon consideration of the entire record of proceedings in the trial court and the law as set forth above, this court finds: (1) when a waiver of the physician-patient privilege by a party to a lawsuit is inevitable or reasonably probable to occur, the trial court may, within its discretion, order the physician to submit to a discovery deposition, upon the express proviso that information discovered or gained from such discovery not be used until such time as actual waiver occurs; (2) the physician-patient privilege is waived when the party who owns the privilege takes the deposition of his own treating physician for

use at trial; (3) upon waiver of the physician-patient privilege, properly discovered testimony of the physician may be used to oppose a motion for summary judgment; (4) at the time that the trial court ordered appellant's treating physician to submit to a discovery deposition, it was reasonably probable that appellant would, during the pendency of the proceedings, waive the physician-patient privilege as to his treating physician; (5) the trial court's order, properly construed, prohibited the use of such discovered information until such time as an actual waiver occurred; (6) appellant waived his physician-patient privilege as to Dr. Kalb when he took Dr. Kalb's deposition for use at trial and, waiver having occurred prior to the filing of appellant's motion for summary judgment, the discovery testimony of Dr. Kalb was properly used by appellee to oppose such motion; and (7) the trial court did not abuse its discretion in ordering Dr. Kalb to submit to a discovery deposition and did not err in considering that testimony in making its decision on appellant's motion for summary judgment.

Accordingly, appellant's first assignment of error is not well taken.

## II. RECOGNITION OF CONDITION BY SELF–INSURED EMPLOYER

 In his second assignment of error, appellant contends that the trial court erred in denying his motion for summary judgment, arguing that appellee had explicitly recognized the condition of "substantial aggravation of pre-existing bilateral patellofemoral arthritis" by virtue of its being a self-insured employer who has paid medical bills and compensation and authorized surgeries based on that diagnosis and has submitted commission forms indicating that such diagnosis is an allowed condition.

Appellee responds: (1) Ohio workers' compensation law, by virtue of the application of R.C. 4123.84(A)(3)(a) and *State ex rel. Williams v. Indus. Comm.* (1984), 11 Ohio St.3d 240, 11 OBR 553, 465 N.E.2d 80, does not support an "implicit" recognition of additional conditions; (2) any objection appellant had was waived when he failed to request submission of this issue to the jury; (3) appellant's motion for summary judgment was not properly supported in accordance with Civ.R. 56; and (4) at best, appellant raised an issue of fact as to whether appellee "waived" its right to contest the additional allowance. Appellee does not argue that it did not certify "osteoarthritis" as an allowed condition in the claim on the C–174 form or that it did not pay benefits or compensation based on such diagnosis.

Appellant replies: (1) Ohio workers' compensation law supports *explicit* recognition of additional allowance by self-insured employers; (2) this issue need not be submitted to the jury in order to claim error on appeal where the issue was seriously pressed to the attention of the trial court, the facts are

undisputed and he is entitled to judgment as a matter of law; and (3) his failure to obtain an affidavit from the custodian of the workers' compensation files was due to appellee's assurances that they would be dropping their appeal, that such an affidavit was subsequently secured and filed, and that the documents all fall within exceptions to the hearsay rule.

The issue presented by appellant's second assignment of error is whether a self-insured employer who, subsequent to the initial certification of a workers' compensation claim, authorizes surgeries and pays medical and disability benefits based on a condition not originally certified in the claim, which condition the employer has reported as "allowed" on C–174 forms, has made a conclusive determination that it has granted the allowance of that condition into the claim.

In Ohio, employers are required to pay premiums into the State Insurance Fund for the purpose of establishing coverage for their injured employees. Certain qualifying employers may be granted the privilege of paying compensation and benefits directly to their injured employees. R.C. 4123.35. "A self-insuring employer not only pays compensation directly to his injured employes but also adjudicates their claims for benefits in the absence of a dispute."[1] Young's Workmen's Compensation Law (2 Ed.1971) 239, Section 13.11; R.C. 4123.35(B); see, also, Ohio Adm.Code 4123–3–09 and 4123–3–15. Accordingly,

---

**1.** As to the procedure for making a "claim," it should be noted that Ohio Adm.Code 4123–3–15(B)(1)(d) provides that, in order for an employee "to secure allowance of a disability or condition not previously considered," he shall use a Form C–85–A, or file a form C–86. Ohio Adm.Code 4123–3–16. In the case of a self-insuring employer, these "applications":

"shall be submitted to the self-insuring employer which shall accept or refuse the matters sought upon application. In the event of disagreement * * * the procedure specified in rule 4123–3–13 of the Administrative Code shall be followed * * *." Ohio Adm.Code 4123–3–15(B)(3).

Ohio Adm.Code 4123–3–13–(A) provides that, in the event there is a dispute or disagreement between the employee and the self-insuring employer, either party may filed a further application with the bureau.

By its language, the "applications" specified in these sections of the Administrative Code must be filed only when the employee desires to "secure" an allowance into the claim "not previously considered." A self-insured employer, therefore, is not prohibited from considering and granting an allowance of a condition not originally certified or allowed in the claim in the absence of the filing of a form C–85A or C–86 by the employee. Also, formal rules of pleadings and procedure are not applicable to workers' compensation cases. *Toler v. Copeland Corp.* (1983), 5 Ohio St.3d 88, 91, 5 OBR 140, 143, 448 N.E.2d 1386, 1389. A "claim," therefore, may be made in any manner that will raise the question necessary to be determined, even in the absence of the use of forms or applications mandated by the rules. *W.S. Tyler Co. v. Rebic* (1928), 118 Ohio St. 522, 526, 161 N.E. 790, 791; *Lane v. Indus. Comm.* (1927), 24 Ohio App. 196, 201, 156 N.E. 508, 510; *Indus. Comm. v. Willenborg* (1928), 29 Ohio App. 162, 163 N.E. 212; *State ex rel. Crabbe v. Cashman* (1929), 34 Ohio App. 23, 27, 29, 170 N.E. 40, 41, 42.

Ohio Adm. Code 4121–9–01(C) (now 4123–19–01[C]) provides, in pertinent part, that:

"A self-insured employer may, without any prior order from the commission, grant or refuse to grant *any* claim made under the Ohio Workers' Compensation Act." (Emphasis added).

The effect of the granting of a claim by a self-insured employer was discussed by the court in *State ex rel. Saunders v. Metal Container Corp.* (Nov. 29, 1988), Franklin County App. No. 87AP–509, unreported, 1988 WL 129162, affirmed by *State ex rel. Saunders v. Metal Container Corp.* (1990), 52 Ohio St.3d 85, 556 N.E.2d 168, which explained that:

"[When] * * * the employer is self-insured[,] [t]he initial determination of allowed conditions necessarily is made by the employer in such a situation. The district hearing officer cannot modify that finding over the objection of the claimant, upon the assumption that the self-insured employer erroneously certified the condition. The district hearing officer had no jurisdiction under R.C. 4123.52, or otherwise, to modify the original finding of the employer as to the allowed condition over the objection of the claimant. The employer who made the determination and certified the claim cannot now complain, as it attempted to do before the district hearing officer in March 1986 that it, the employer, had made an erroneous determination and certification as to the allowed condition.

"The situation here is not a mistake of law, but instead, a factual determination * * *." *Id.* at 6.

As to appellee's contention that R.C. 4123.84 precludes a finding that a self-insured employer has recognized a condition not previously recognized in the claim by paying compensation and benefits and filing a C–174 noting such condition as allowed, R.C. 4123.84 provides, in pertinent part, that:

"(A) In all cases of injury or death, claims for compensation or benefits for the specific part or parts of the body injured shall be forever barred unless, within two years after the injury or death:

" * * *

"(3) In the event the employer has elected to pay compensation or benefits directly, one of the following has occurred:

"(a) Written notice of the specific part or parts of the body claimed to have been injured has been given to the commission or bureau, or the employer has furnished treatment by a licensed physician in the employ of an employer; *providing, however, that the furnishing of such treatment shall not constitute a recognition of a claim as compensable, but shall do no more than satisfy the requirements of this section;*

"(b) Compensation or benefits have been paid or furnished equal to or greater than is provided for in sections 4123.52, 4123.55 to 4123.62, and 4123.64 to 4123.67 of the Revised Code.

"* * *

"(B) As used in division (A)(3)(b) of this section 'benefits' means payment by a self-insured employer to, or on behalf of, an employee for:

"(1) A hospital bill;

"(2) A medical bill to a licensed physician or hospital;

"(3) An orthopedic or prosthetic device." (Emphasis added.)

In reviewing the above statutory provisions it is clear that it is only the furnishing by the employer of treatment by a licensed physician in its employ that R.C. 4123.84(A)(3)(a) provides shall not constitute a recognition of the claim as compensable. By applying the maxim of statutory interpretation that the expression of one thing is the exclusion of another (*expressio unius est exclusio alterius*), *Kirsheman v. Paulin* (1951), 155 Ohio St. 137, 147, 44 O.O. 134, 98 N.E.2d 26; *Soss v. Mayfield, Adm., Bur. of Workers' Comp.* (June 7, 1991), Lucas County App. No. L–90–002, at 4, 1991 WL 97318, and in light of R.C. 4123.95, which provides for liberal interpretation of R.C. 4123.84 in favor of employees, this court must conclude that R.C. 4123.84 permits a finding that a self-insured employer has recognized a claim as compensable by payment of compensation or benefits.

The conclusion that payment of compensation or benefits by a self-insured employer may furnish the basis for a finding that the employer has recognized the claim as compensable is further supported by an examination of the legislative history of R.C. 4123.84. As Young, *supra*, 241–243, Section 13.15, explains, prior to 1959, an employee of a self-insurer was required to file written notice with the commission within two years of the date of his injury. "An exception existed where the employer had recognized a claim, no form of application to the employer specified, by the payment of compensation * * *." *Id.* At that time, the definition of compensation did not include medical expenses. The 1959 amendments, however, in effect included the furnishing of medical services within the definition of compensation under R.C. 4123.01. As a result:

"The employers were understandably concerned over the possibility that every instance of furnishing medical service would be held to be the recognition of an industrial claim at some later date. Obviously, the employe who reported to the dispensary for service and said that he received the injury at home would not be entitled to a later finding that the employer allowed a workmen's compensation claim by the furnishing of medical service. It is,

also, obvious that an employe who reported to the dispensary stating that he sustained his injury on the job would be entitled to a later finding that the employer allowed his claim by rendering a series of medical treatments for the condition. In between the extremes were numerous twilight factual situations." *Id.*

The 1963 amendments solved this problem by removing the definitions of compensation and benefits from R.C. 4123.01 and revising R.C. 4123.84 so as to not include the mere furnishing of medical treatment by a physician within the employ of an employer under the definition of compensation or benefits. The 1978 amendments to R.C. 4123.84 included the furnishing of treatment by a licensed physician in the employ of the self-insuring employer, but provided that the furnishing of such treatment shall only operate to satisfy the limitations period and will not constitute a recognition of the claim as compensable. The statute as amended did not affect the practice that a claim can be recognized as compensable by virtue of the fact that a self-insured employer had paid compensation or benefits.

As to appellee's contention that *State, ex rel. Williams supra,* applies to preclude "implicit" recognition of a claim, *Williams* is clearly distinguishable in that it involved: (1) *implicit* recognition, as opposed to *explicit* recognition; and (2) "recognition" by the commission, not the employer, whose procedures require, at a minimum, a tentative order and notice to the employer to object, whereas this case involves a factual determination by the employer to allow the condition pursuant to procedures that permit a self-insured employer to grant any claim without prior order from the commission.

As to appellee's contention that appellant abandoned his explicit recognition claim by not offering any evidence on this issue at trial, it is clear that "[a] trial court's denial of a motion for summary judgment is reviewable on appeal by the movant from a subsequent adverse final judgment." *Balson v. Dodds* (1980), 62 Ohio St.2d 287, 16 O.O.3d 329, 405 N.E.2d 293, paragraph one of the syllabus. Appellee contends that we should follow the concurring opinion by Justice Brown in *Dupler v. Mansfield Journal* (1980), 64 Ohio St.2d 116, 127, 18 O.O.3d 354, 361, 413 N.E.2d 1187, 1195, fn. 11, and apply "the harmless error doctrine to denials of summary judgment motions," *id.,* as the court did in *Graham v. Pavarini* (1983), 9 Ohio App.3d 89, 95, 9 OBR 140, 458 N.E.2d 421. Application of the harmless-error doctrine, however, to a case in which the issues pressed on summary judgment were not actually litigated at trial, would expand the harmless-error doctrine in such a way that any issue raised by summary judgment, but not tried, would be waived on appeal. Not only would such an application preclude review of matters of law, not triable to a fact-finder, but " * * * such a scheme would inhibit

effective and consistent appellate court scrutiny of trial court compliance with pre-trial procedure." *Balson, supra,* 62 Ohio St.2d at 289, 16 O.O.3d at 331, 405 N.E.2d at 295.

 Lastly, as to appellee's contention that appellant's summary judgment motion was not properly supported in accordance with Civ.R. 56, Civ.R. 56 provides, in pertinent part, that:

"(C) * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pleading case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule."

In *State ex rel. Corrigan v. Seminatore* (1981), 66 Ohio St.2d 459, 467, 20 O.O.3d 388, 392–393, 423 N.E.2d 105, 111, the Supreme Court of Ohio summarized the affidavit requirements of Civ.R. 56(E) as follows:

"(1) that it be made on personal knowledge, (2) that it set forth facts which would be admissible in evidence, and (3) that it affirmatively show the affiant to be competent to testify to the matters stated. In addition, the rule requires that '[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.'

" * * * The requirement of Civ.R. 56(E) that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions."

The requirement of Civ.R. 56(E), that the papers be "sworn or certified," is, of course, met by a certification contained within the paper itself. *Olverson v. Butler* (1975), 45 Ohio App.2d 9, 12, 74 O.O.2d 11, 13, 340 N.E.2d 436, 438.

The affidavit of Mark S. Lindberg, Esq. stated that the C–174's were true and accurate copies; and the remaining requirements of Civ.R. 56(E) are satisfied by virtue of the information contained in the C–174's as certified by appellee. Further, the documents are outside the definition of "hearsay" since they are an admission by a party opponent. Evid.R. 801(D)(2). The evidence submitted by the C–174's was, therefore, "sufficiently in compliance with Civ.R. 56(E) as to require the adverse party to respond by affidavit or

otherwise as provided by Civ.R. 56." *State ex rel. Corrigan, supra,* 66 Ohio St.2d at 467, 20 O.O.3d at 393, 423 N.E.2d at 111; Civ.R. 56(E).[2]

Upon consideration of the entire record of proceedings in the trial court and the law as set forth above, this court finds: (1) it is undisputed that appellee certified to the commission that the claim was allowed for "osteoarthritis" of the "knees"; that it paid physician fee bills, pharmacy bills and other medical expenses; that it authorized the surgery of February 9, 1987 on a form that noted the diagnosis of "internal derangement left knee with severe patello-femoral osteoarthritis"; "that it paid all medical and workers' compensation benefits related to surgeries on * * * February 9, 1987 pursuant to the workers' compensation laws of the State of Ohio"; and that it paid disability compensation based on a diagnosis of "bilateral patellofemoral osteoarthritis"; (2) there remains no genuine issue as to any material fact and when construing the evidence most strongly in favor of appellee, reasonable minds can only conclude that by so doing appellee made a conclusive factual determination that the claim was amended to include bilateral patellofemoral osteoarthritis and that determination may not be withdrawn by the employer, absent a showing of fraud; and (3) appellant was entitled to judgment as a matter of law on his motion for summary judgment.

Accordingly, appellant's second assignment of error is found well taken.

On consideration whereof, this court finds that substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas denying summary judgment in favor of appellant is reversed. This case is remanded to said court to enter judgment in accordance with this opinion. Costs assessed against appellee, Jeep Corporation.

*Judgment reversed.*

HANDWORK, P.J., and SHERCK, J., concur.

---

2. In addition to the C–174's and admissions, in Dr. Kalb's discovery deposition, a C–84 was submitted as an exhibit by appellee dated July 29, 1987, which requested disability compensation until September 30, 1987 based upon the condition "post tibia tuberosity advancement/bilateral patello femoral osteoarthritis," and which, according to the C–174 for the reporting period ending "11/30/87," certified the condition of "osteoarthritis" as allowed in the claim and was paid by appellee. Likewise, attached to Dr. Kalb's trial deposition were several C–84's noting a similar diagnosis. Since these undisputed facts are sufficient for a determination by this court, this court need not determine whether the other documents attached to plaintiff's motion for summary judgment should have been considered by the trial court. See, *e.g., Knowlton Co. v. Knowlton* (1983), 10 Ohio App.3d 82, 87, 10 OBR 104, 109, 460 N.E.2d 632, 637.