[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 154.]

THE STATE EX REL. GRIFFITH, APPELLANT, *v.* INDUSTRIAL COMMISSION OF

OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Griffith v. Indus. Comm.*, 1999-Ohio-310.]

*Workers' compensation—Mandamus to compel Industrial Commission to grant relator's application for temporary total disability compensation—Denial of writ affirmed.*

(No. 97-2432—Submitted October 12, 1999—Decided November 10, 1999.)

APPEAL from the Court of Appeals for Franklin County, No. 96APD11-1543.

————————————

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy,* for appellant.

*Betty D. Montgomery*, Attorney General, and *Cheryl J. Nester*, Assistant Attorney General, for appellee Industrial Commission of Ohio.

*Critchfield, Critchfield & Johnston, Ltd*., and *Susan E. Baker,* for appellee Rubbermaid, Inc.

————————————

*Per Curiam*.

{¶ 1} Minnie Griffith, appellant, sought a writ of mandamus to compel appellee Industrial Commission of Ohio to grant her application for temporary total disability compensation ("TTD") from December 6, 1995 until April 14, 1996. The commission denied her application on the ground that her disability had not resulted from the medical conditions allowed for her industrial injury. The Court of Appeals for Franklin County denied the writ, finding that the commission had some evidence on which to base this conclusion and, thus, had not abused its discretion in denying TTD. *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936. Griffith appeals as of right.

**{¶ 2}** Griffith sustained an industrial injury while working for appellee Rubbermaid, Inc., a self-insured employer for the purpose of workers' compensation laws. When she applied for TTD, only two conditions had been formally recognized by her employer as compensible in her claim—"contusion left knee" and "internal derangement/tear medial meniscus left knee." Griffith had arthroscopic knee surgery on December 6, 1995, and alleged a period of temporary and total disability beginning on that date as a result of her surgery.

**{¶ 3}** Rubbermaid authorized and paid for Griffith's surgery after her physician represented, in a C-161 Request for Authorization Form, that the allowed conditions required the arthroscopy. But according to a hospital report prepared on the day of her surgery, Griffith's physician's preoperative reason for performing the knee surgery was "[d]egenerative arthritis," not the "[c]ontusion left knee, internal derangement/tear medial meniscus" he had represented to Rubbermaid. The hospital report also confirmed the physician's preoperative diagnosis—it revealed that his postoperative diagnosis was "the same" as the preoperative diagnosis.

**{¶ 4}** The discrepancy between the physician's two explanations for Griffith's surgery prompted the commission's findings that the surgery was not treatment for her allowed conditions and, therefore, had not caused any disability attributable to her industrial injury. Griffith now challenges that finding with four propositions of law. We are not persuaded by any of her arguments and, therefore, affirm the court of appeals' judgment.

**{¶ 5}** Griffith first argues that since she had had surgery made necessary by previously authorized surgery on the part of her body in which her injury had caused the allowed medical conditions in her claim, any medical condition that subsequently developed in that "allowed body part" as a result of the second surgery was also compensable. She cites *Dent v. AT&T Technologies, Inc.* (1988), 38 Ohio St.3d 187, 527 N.E.2d 821, and *State ex rel. Miller v. Indus. Comm.* (1994), 71

Ohio St.3d 229, 643 N.E.2d 113, but neither case dispensed with the requirement that medical conditions be formally recognized, either through certification by a self-insured employer or allowance by the Ohio Bureau of Workers' Compensation ("BWC"), as having been caused by a claimant's industrial injury. In fact, we specifically rejected this idea in *State ex rel. Meridia Hillcrest Hosp. v. Indus. Comm.* (1995), 74 Ohio St.3d 39, 656 N.E.2d 336.

{¶ 6} In *Meridia*, we distinguished *Dent* and *Miller* as cases in which the parties were debating whether the claimants either had complied or needed to comply with the statute of limitations in R.C. 4123.84, which requires claimants to notify their employers of the specific body part injured within two years of the industrial injury. See, also, *State ex rel. Lear Siegler, Inc. v. Indus. Comm.* (Aug. 9, 1977), Franklin App. No. 77AP-276, unreported. But in ensuring notice to employers and cutting off stale claims, *Wargetz v. Villa Sancta Anna Home for Aged* (1984), 11 Ohio St.3d 15, 17, 11 OBR 49, 51, 462 N.E.2d 1215, 1217, compliance with R.C. 4123.84 is a completely different question from whether a medical condition has been determined to be compensable as the result of an industrial injury. And where, as here, the notice requirement in R.C. 4123.84 is not at stake, *Meridia* concomitantly establishes that formal allowance is required. *Id.,* 74 Ohio St.3d at 42, 656 N.E.2d at 339. Accordingly, we reject Griffith's first proposition of law.

{¶ 7} Griffith next argues that Rubbermaid certified her arthritic condition as part of her claim by authorizing and paying for her knee surgery. She relies on *State ex rel. Baker Material Handling Corp. v. Indus. Comm.* (1994), 69 Ohio St.3d 202, 631 N.E.2d 138, and *Garrett v. Jeep Corp.* (1991), 77 Ohio App.3d 402, 602 N.E.2d 691; however, the courts in those cases did not find the employers responsible for the claimants' additionally alleged conditions just because the employers authorized and paid for medical treatment. Rather, those employers were held accountable because they had explicitly acknowledged and certified the

additional conditions on C-174 forms designed, in part, to inform BWC about compensable conditions in their claims. *Baker,* 69 Ohio St.3d at 204, 631 N.E.2d at 141; *Garrett,* 77 Ohio App.3d at 406, 602 N.E.2d at 694. See, also, *State ex rel. Chrysler Corp. v. Indus. Comm.* (1998), 81 Ohio St.3d 158, 159, 689 N.E.2d 951, 953. Rubbermaid has made no such explicit concessions. Thus, we hold that Rubbermaid did not allow Griffith's arthritic condition under *Baker* or *Garrett*.

{¶ 8} But Griffith also contends, in effect, that this self-insured employer implicitly certified Griffith's medical conditions as compensable. She maintains that Rubbermaid had notice of the additional justification for Griffith's arthroscopy because, just before the surgery, her physician wrote a letter to Rubbermaid indicating that she also had developed degenerative arthritis related to her injury. The court of appeals could find no authority for attributing an implied certification to Rubbermaid, and we have no reason to create such a precedent based on these facts.

{¶ 9} It is not clear that Rubbermaid relied on the letter in addition to the formal request for authorization. But even assuming that Rubbermaid did rely on the letter, the letter did not give the notice of a new condition that Griffith attributes to it. The letter advised that while early arthritic changes "appear[ed]" to be present in her knee, those changes "would really not [have] chang[ed] the fact that she [was] having enough trouble for arthroscopic procedure." The court of appeals reasonably concluded that even with the accompanying nonallowed arthritic condition, this statement suggested that the allowed knee condition, by itself, necessitated the planned surgery. And since the existence of a contributing nonallowed condition is not a legitimate reason for refusing to pay for medical treatment independently required for an allowed condition, *State ex rel. Waddle v. Indus. Comm.* (1993), 67 Ohio St.3d 452, 457, 619 N.E.2d 1018, 1021, approval of the surgery in reliance on the letter would not imply acceptance of a new condition. The court of appeals correctly found that some evidence supported the

commission's denial of TTD. Accordingly, we also reject Griffith's second proposition of law.

**{¶ 10}** In her third proposition of law, Griffith maintains that the commission had no authority to deny TTD for any reason other than that originally advanced by Rubbermaid. Rubbermaid initially rejected Griffith's TTD application on the ground that she had retired from her job voluntarily in February 1995, months before the knee surgery as a result of which she claimed to be temporarily and totally disabled. Griffith argues that Rubbermaid waived other defenses to her TTD claim, even though Rubbermaid had no documents in its possession at the time of the rejection that showed that Griffith's disability arose from a nonallowed condition.

**{¶ 11}** Griffith again relies on *Baker, supra*, as well as *State ex rel. Saunders v. Metal Container Corp.* (Nov. 29, 1988), Franklin App. No. 87AP-509, unreported, 1988 WL 129162, affirmed (1990), 52 Ohio St.3d 85, 556 N.E.2d 168, both of which confirmed that the commission cannot, over the claimant's objection, change the nature of an allowed condition once certified by a self-insured employer. But neither *Baker* nor *Saunders* is controlling here because, as discussed, Rubbermaid never formally recognized the compensability of Griffith's arthritic condition. Moreover, neither of these cases goes so far as to establish that a self-insured employer is forever bound by its initial reason for disallowing a certain type of compensation, especially where, as here, the employer had no realistic way to know that another legitimate defense existed. Accordingly, Griffith's third proposition of law, too, is rejected.

**{¶ 12}** Finally, Griffith contends that her retirement was involuntary and due to her industrial injury, so that her 1995 retirement does not disqualify her from receiving TTD. See *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678 (claimant who retires from place of employment for reasons unrelated to industrial injury has independently prevented return to

workplace and is not eligible for TTD).  We have already decided that the commission had some evidence upon which to deny Griffith TTD on grounds unrelated to retirement and, therefore, did not abuse its discretion.  Accordingly, we do not reach the issue presented in Griffith's fourth proposition of law.

{¶ 13} For these reasons, we affirm the judgment of the court of appeals and deny the requested writ of mandamus.

*Judgment affirmed*
*and writ denied.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____