[Cite as *State ex rel. Omni Manor, Inc. v. Indus. Comm.*, 2019-Ohio-2521.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Omni Manor, Inc., | : | |
| Relator, | : | |
| v. | : | No. 17AP-725 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on June 25, 2019

**On brief:** *Manchester Newman & Bennett, LPA,* and
*Thomas F. Hull,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Kevin J. Reis,* for
respondent Industrial Commission of Ohio.

**On brief:** *Green Haines Sgambati, Co., LPA,* and *Shawn D.
Scharf,* for respondent Diana Garringer.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Omni Manor, Inc. ("Omni Manor"), filed this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("the commission"), to vacate its order authorizing the surgery requested by respondent, Diana Garringer ("claimant"), and ordering the commission to deny the request for the surgery.

{¶ 2} This court referred the matter to a magistrate pursuant to Civ.R.53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate rendered a decision that includes findings of fact and conclusions of law. The magistrate's decision, which is

appended hereto, recommends this court deny Omni Manor's request for a writ of mandamus, leaving in place the commission's order granting claimant's request for a total shoulder arthroplasty following her workplace injury to her shoulder rotator cuff. Omni Manor filed objections to the magistrate's decision, and the matter is now before the court for our independent review.

## I.  Objections to the Findings of Fact

{¶ 3}   Omni Manor sets forth three objections to the magistrate's findings of fact. We address them each in turn.

### A.  Finding of Fact No. 6

{¶ 4}   First, Omni Manor objects to Finding of Fact No. 6, arguing it mischaracterizes the procedural posture of the case prior to Omni Manor initiating this original action in mandamus. Though Omni Manor asserts it is challenging Finding of Fact No. 6, it appears from the substance of its objection that Omni Manor is actually objecting to Finding of Fact No. 6 and Finding of Fact No. 7, which state in their entirety:

> 6.   Relator's further administrative challenges were unsuccessful and claimant's claim remained additionally allowed for right shoulder rotator cuff tear.
>
> 7. Relator pursued the matter in the common pleas court; however, relator was ultimately unsuccessful. As a result, claimant's claim continued to be allowed for right shoulder rotator cuff tear.

(App'x at ¶ 22, 23.)

{¶ 5}   We agree with Omni Manor that the magistrate's decision erroneously states that Omni Manor pursued the matter in common pleas court. A review of the record indicates Omni Manor did not pursue the matter in common pleas court pursuant to R.C. 4123.512. Accordingly, we sustain the portion of Omni Manor's objection related to the reference to the procedural history in common pleas court.

{¶ 6}   However, Omni Manor additionally argues in this objection that the magistrate incorrectly analyzed the facts of the prior history of this case and asserts this finding of fact should contain a more complete explanation of the non-allowed conditions and why Omni Manor sought in the administrative proceedings to press for further distinction between the allowed and non-allowed conditions present in claimant's injured

shoulder. This argument appears to be an attempt by Omni Manor to frame the factual findings in order to force a different legal conclusion. Having reviewed the record, we find no error in the magistrate's explanation of the procedural history of the matter, except for the erroneous reference to filings in common pleas court. Thus, we sustain in part and overrule in part this objection.

### B. Finding of Fact No. 8

{¶ 7} In its next objection, Omni Manor argues the magistrate erred in Finding of Fact. No. 8 when it failed to fully describe the C-9 and the report of David A. Tonnies, M.D. Omni Manor asserts these documents contain errors and fail to fully analyze the allowed conditions in reference to the non-allowed conditions. Again, this is an attempt by Omni Manor to restate the facts in order to compel a different legal conclusion. The magistrate's finding of fact is an accurate summary of Dr. Tonnies' C-9 and report. We overrule this objection.

### C. Finding of Fact No. 10

{¶ 8} In its third and final objection to the findings of fact, Omni Manor argues Finding of Fact No. 10 does not point out alleged deficiencies in the SHO's order and does not sufficiently emphasize that a total shoulder arthroplasty is not the usual or customary treatment for a rotator cuff tear. As in its previous two objections, Omni Manor once again attempts to reframe to the factual findings in order to force a different legal conclusion. However, having reviewed the record, we find that the magistrate's Finding of Fact. No. 10 is an accurate summary and description of the SHO's order. We overrule Omni Manor's third objection to the findings of fact.

## II. Objections to Conclusions of Law

{¶ 9} Omni Manor additionally objects to the magistrate's conclusions of law. Omni Manor sets forth three objections asserting (1) Dr. Tonnies' report and C-9 do not constitute "some evidence" sufficient to authorize the surgical procedure of total shoulder arthroplasty; (2) the magistrate failed to sufficiently analyze why the total shoulder arthroplasty was independently required to treat the allowed condition; and (3) the magistrate erred in its ultimate legal conclusion that Omni Manor's writ of mandamus should be denied. Taken together, these three objections reflect the same argument Omni

Manor has made throughout these proceedings: that the commission abused its discretion in authorizing the total shoulder arthroplasty as treatment for claimant's rotator cuff tear.

{¶ 10} As the magistrate noted, a relator seeking mandamus must demonstrate a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Gill v. School Emps. Retirement Sys. of Ohio*, 121 Ohio St.3d 567, 2009-Ohio-1358, ¶ 18. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliot v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). However, where the evidence contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987).

{¶ 11} Omni Manor argues the commission abused its discretion in relying on Dr. Tonnies' report and C-9 as "some evidence" to support authorizing the total shoulder arthroplasty. Specifically, Omni Manor argues Dr. Tonnies' report and C-9 do not satisfy the test outlined in *State ex rel. Miller v. Indus. Comm.*, 71 Ohio St.3d 229 (1994). As the magistrate notes, the three-pronged test set forth in *Miller* for the authorization of medical services asks (1) are the medical services reasonably related to the industrial injury that is the allowed condition?; (2) are the services reasonably necessary for treatment of the allowed conditions?; and (3) is the cost of such service medically reasonable? *Miller* at 232.

{¶ 12} Omni Manor asserts Dr. Tonnies' report is internally inconsistent and does not sufficiently explain why a total shoulder arthroplasty is independently required for claimant's rotator cuff tear. First, we do not agree with Omni Manor that Dr. Tonnies' report is internally inconsistent. The report notes that claimant has a rotator cuff tear that requires surgery. The report then notes that because claimant has underlying, degenerative shoulder conditions, the normal surgical approach for a rotator cuff tear would be unsuccessful. Therefore, Dr. Tonnies concludes the best surgical option to successfully repair claimant's rotator cuff tear is a total shoulder arthroplasty. We agree with the magistrate that the commission did not abuse its discretion in concluding that this report and C-9 constitute "some evidence" to satisfy the *Miller* test.

{¶ 13} Omni Manor further argues that Dr. Tonnies' report and C-9 fail to satisfy the additional requirement that, when non-allowed conditions are involved, the requested

treatment must be "independently required for an allowed condition." *State ex rel. Griffith v. Indus. Comm.*, 87 Ohio St.3d 154, 156 (1999). We disagree. *Griffith* specifically provides that "the existence of a contributing nonallowed condition is not a legitimate reason for refusing to pay for medical treatment independently required for an allowed condition." *Id.* at 157. The report explains that the ordinary surgical approach to a rotator cuff tear would be unsuccessful given the preexisting state of claimant's shoulder. Though it is true claimant's underlying conditions altered what would be the normal surgical approach to the treatment of a rotator cuff tear, Dr. Tonnies' report and C-9 adequately state that the total shoulder arthroplasty remains the required treatment for the allowed condition in this specific case. That the surgical procedure requested may ultimately provide relief to claimant's underlying, non-allowed conditions does not render the surgical procedure any less independently necessary to treat the allowed condition. *See State ex rel. HBD Industries, Inc. v. Indus. Comm.*, 10th Dist. No. 02AP-825, 2003-Ohio-1449, ¶ 26-29.

{¶ 14} Through this argument, Omni Manor attempts to impose a burden on the commission to more fully explain why the total shoulder arthroplasty is independently required to treat the rotator cuff tear. However, the commission is required to "specifically state which evidence and only that evidence which has been relied upon to reach their conclusion, and a brief explanation stating why the claimant is or is not entitled to the benefits requested." (Emphasis omitted.) *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203, 204 (1991). The commission satisfied this burden in relying on Dr. Tonnies' report and C-9. Thus, we agree with the magistrate that the commission did not abuse its discretion in concluding Dr. Tonnies' report and C-9 constituted "some evidence" to support the authorization of claimant's requested surgical procedure. For these reasons, we overrule Omni Manor's objections to the magistrate's conclusions of law.

## III. Disposition

{¶ 15} Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate correctly determined that Omni Manor is not entitled to the requested writ of mandamus. Though we sustain in part Omni Manor's first objection to the magistrate's finding of fact related to any proceedings in common pleas court, that factual error does not implicate the magistrate's legal conclusions, and we find the magistrate properly applied the pertinent law to the salient facts. Accordingly, we adopt the magistrate's decision as

our own, including the findings of fact as modified and conclusions of law contained therein. We therefore sustain in part Omni Manor's first objection to the magistrate's decision, overrule the remainder of Omni Manor's objections, and deny Omni Manor's request for a writ of mandamus.

*Objections sustained in part and overruled in part;*
*writ of mandamus denied.*

BRUNNER and BEATTY BLUNT, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Omni Manor, Inc., | : | |
| Relator, | : | |
| v. | : | No. 17AP-725 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on October 30, 2018

*Manchester Newman & Bennett, LPA,* and *Thomas F. Hull,* for relator.

*Michael DeWine,* Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio.

*Green Haines Sgambati, Co., LPA,* and *Shawn D. Scharf,* for respondent Diana Garringer.

IN MANDAMUS

{¶ 16} Relator, Omni Manor, Inc., has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which authorized the surgery requested by respondent Diana Garringer ("claimant") and ordering the commission to deny the request for surgery.

Findings of Fact:

{¶ 17} 1.   Claimant sustained a work-related injury on April 28, 2016 and her workers' compensation claim was originally allowed for right shoulder sprain.

{¶ 18} 2.  An MRI taken May 27, 2016 revealed the following:

ROTATOR CUFF:

Full-thickness, full width medial retracted tears of supraspinatus and infraspinatus with medial retraction of the torn tendon stump to the level of the glenohumeral joint. There is superior migration of the humeral head with severe narrowing of the subacromial space. Glenohumeral joint fluid decompresses into the bursal space. High-grade partial-thickness subscapularis tear with nonvisualization of the biceps tendon, likely torn and retracted. Moderate to severe muscle atrophy most significantly involving supraspinatus. Teres minor intact.

There is glenohumeral chondral thinning intermediate to high-grade involving the humeral articular surface. The glenoid articular cartilage is relatively maintained. No degenerative marrow edema. Inferior glenohumeral ligaments and axillar folds are intact. There is thickening and intermediate intrasubstance signal involving the humeral attachment of the axillary folds likely related to glenohumeral instability. No identifiable intra-articular loose body.

Type II acromion. Moderate acromioclavicular degenerative changes with capsular hypertrophy and edema. Acromioclavicular and coracoclavicular ligaments are grossly intact.

{¶ 19} 3.   Claimant's treating physician David A. Tonnies, M.D., provided an orthopedic comprehensive evaluation.   In his August 2, 2016 report, Dr. Tonnies explained that claimant worked as a housekeeper at a nursing home.  The injury occurred when she was helping another employee pick up a heavy loveseat.  Claimant explained that she heard a pop in her shoulder and had immediate pain and discomfort.  Dr. Tonnies provided his physical findings on examination, reviewed the May 27, 2016 MRI, and noted the following:

> The MRI shows a massive rotator cuff tear of the right shoulder with retraction. There is evidence of muscle atrophy. There are no fractures.
>
> **DIAGNOSTIC IMPRESSION:**
>
> [One] Right shoulder rotator cuff tear.
> [Two] Right shoulder degenerative joint disease.
> [Three] Right shoulder rotator cuff arthropathy.
>
> Dr. Tonnies recommended the following treatment:
>
> The patient was shown her x-rays and her MRI; she was advised of her condition and treatment options were discussed. Conservative and surgical options were reviewed. The patient has a massive tear of the rotator cuff with retraction. The patient already has muscle atrophy. A primary repair of the rotator cuff is unlikely at this time secondary to the degree of involvement. Her best option would be that of a reverse total shoulder arthroplasty. The patient wants to think about her options before proceeding with any surgery. She will do home exercises at this time. She will call our office to set up a follow up appointment. If her symptoms intensify, she is to contact the office immediately.

{¶ 20}  4.  Based on the report of Dr. Tonnies and the MRI, claimant filed a motion asking that her claim be additionally allowed for right shoulder rotator cuff tear.

{¶ 21}  5.   The matter was heard before a district hearing officer ("DHO") on December 6, 2016.  At that time, relator argued that the rotator cuff tear was degenerative, age-related, and/or that it existed before the date of the work injury.  The DHO disagreed and, as a result, claimant's claim was additionally allowed for "right shoulder rotator cuff tear."

{¶ 22}  6.   Relator's further administrative challenges were unsuccessful and claimant's claim remained additionally allowed for right shoulder rotator cuff tear.

{¶ 23}  7.  Relator pursued the matter in the common pleas court; however, relator was ultimately unsuccessful.  As a result, claimant's claim continued to be allowed for right shoulder rotator cuff tear.

{¶ 24}  8.  On September 30, 2016, claimant filed a C-9 request for medical services reimbursement asking the commission to authorize Dr. Tonnies to perform a reverse total

arthroplasty for her right shoulder rotator cuff condition. As indicated in Dr. Tonnies' August 2, 2016 report, Dr. Tonnies opined that, given the degenerative joint disease of claimant's right shoulder, the typical surgical procedures utilized to correct a rotator cuff tear would likely not be successful. For that reason, Dr. Tonnies opined her best option was a reverse total shoulder arthroplasty.

{¶ 25} 9. An independent medical examination was performed by Oscar F. Sterle, M.D. In his May 31, 2017 report, Dr. Sterle identified the allowed conditions in claimant's claim, discussed the history of her injury as well as the medical documents which he reviewed, and provided his physical findings on examination. Thereafter, Dr. Sterle was asked whether the request for reverse total right shoulder arthroplasty was medically necessary and appropriate to treat the allowed conditions in this claim. Dr. Sterle responded in the negative, stating:

> The C-9 requesting a reverse total right shoulder arthroplasty is not medically necessary and appropriate to treat the allowed conditions in the claim. The claim has been allowed for rotator cuff sprain and right shoulder rotator cuff tear.
>
> The condition of right rotator cuff sprain as a soft tissue, self-limiting condition has long been resolved. The condition of right shoulder rotator cuff tear does not require a reverse total right shoulder procedure, which would be inappropriate.
>
> The request for a reverse total right shoulder arthroplasty is appropriate for the pre-existing, long-standing, degenerative condition involving massive rotator cuff tears with arthritis of the shoulder joint.
>
> There was no forceful mechanism of injury and the lifting incident can be considered a low force event.

{¶ 26} When asked whether he believed the treatment requested was reasonably related to claimant's industrial injury, Dr. Sterle again responded in the negative, stating:

> The C-9 requesting a reverse total right shoulder arthroplasty is not reasonably related to Ms. Garringer's industrial injury.
>
> The surgeon diagnosed the claimant's condition of massive tear of the rotator cuff and glenohumeral joint. The rotator cuff tear was deemed to be irreparable, with arthritis of the glenohumeral joint (ball and socket).

> The diagnosis of massive tear of the rotator cuff is in reference to tear of the supraspinatus, infraspinatus, and significant retraction. There was also a very high-grade partial tear of the subscapularis with chronic tear of the long head of the biceps tendon.
> When considering the mechanism of injury and the extensive shoulder pathology, it is very unlikely that these tears involving three tendons of the rotator cuff and the biceps tendon can be considered traumatic.
>
> There is a significant retraction of the full tears of the rotator cuff associated with proximal humeral head migration and glenohumeral (ball and socket) osteoarthritis indicating a chronic condition.
>
> * * *
>
> [B]ecause of significant pre-existing arthritis of the shoulder with massive rotator cuff tear, she will require restrictions of lifting.

{¶ 27} Dr. Sterle also believed that, considering the allowed conditions which resulted from the incident in April 2016, claimant could perform her job duties with no restrictions.

{¶ 28} 10. The request was heard before a DHO on June 26, 2017 and was denied. Specifically, the DHO relied on the medical report of Dr. Sterle and found the requested medical services was not related to nor necessary for treatment of the allowed conditions. Claimant appealed and the matter was heard before a staff hearing officer ("SHO") on August 25, 2017. The SHO vacated the prior DHO order and granted the request for reverse total right shoulder arthroplasty finding that it was within the usual, customary, and reasonable guidelines. The SHO also found the medical services was reasonably related to and reasonably necessary to treat the allowed conditions in the claim and the cost was reasonable. The SHO relied on the report and C-9 completed by Dr. Tonnies.

{¶ 29} 11. Relator's appeal was refused by order of the commission mailed September 20, 2017.

{¶ 30} 12. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 31} For the reasons that follow, it is this magistrate's decision that relator has not demonstrated the commission abused its discretion when it authorized the surgery requested by Dr. Tonnies.

{¶ 32} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 33} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 34} In order to demonstrate entitlement to the disputed medical treatment, claimant was required to meet a three-prong test for the authorization of medical services. Pursuant to *State ex rel. Miller v. Indus. Comm.*, 71 Ohio St.3d 229 (1994), that three-prong test provides: (1) are the medical services reasonably related to the industrial injury that is the allowed condition; (2) are the services reasonably necessary for the treatment of the industrial injury; and (3) is the cost of those services medically reasonable. When the record contains some evidence to support the commission's finding, there is no abuse of discretion and mandamus is not appropriate.

{¶ 35} The commission relied on Dr. Tonnies' C-9 and his August 2, 2016 report. Dr. Tonnies stated that claimant has a massive tear of her right rotator cuff. Dr. Tonnies

also opined that "primary repair of the rotator cuff is unlikely at this time secondary to the degree of involvement." Clearly, Dr. Tonnies is saying that, because of the extent of the tear (massive) and because of the underlying problems with claimant's surgery, problems which are unrelated to the allowed conditions in her claim, the normal surgical treatment utilized to repair a torn rotator cuff will most likely be unsuccessful. Given that claimant had underlying degenerative shoulder issues, Dr. Tonnies opined the best surgical option to successfully repair her rotator cuff tear was through the reverse total shoulder arthroplasty.

{¶ 36} The magistrate finds that the above C-9 and report do in fact constitute some evidence supporting the commission's decision that, in this situation, the medical services requested are reasonably related to her torn rotator cuff, are reasonably necessary to treat the torn rotator cuff, and that the cost of those services is medically reasonable.

{¶ 37} Relator asserts that Dr. Sterle opined the requested surgery was not medically necessary and appropriate; however, Dr. Sterle also opined that the manner in which claimant asserted she injured herself is not what tore her rotator cuff. It was his opinion that the tear already existed. However, as noted in the findings of fact, the claim is allowed for torn rotator cuff of the right shoulder.

{¶ 38} Relator cites *State ex rel. Cleveland Clinic Found. v. Indus. Comm.,* 10th Dist. No. 10AP-329, 2011-Ohio-2269, and asserts that it is factually analogous to the present case. However, the magistrate disagrees. Martha Banks sustained a work-related injury and her claim was allowed for aggravation of pre-existing osteoarthritis in both knees. Dr. Richard E. Grant, an orthopedic surgeon, completed a C-9 form requesting total knee arthroplasty. On that C-9, Dr. Grant listed as the treating diagnosis "715.96." *Id.* at ¶ 32. That specific ICD code is for "osteoarthritis unspecified whether generalized or localized involving lower leg." *Id.* The commission granted the request for surgery and the employer, Cleveland Clinic Foundation, sought a writ of mandamus in this court. The matter was referred to a magistrate who recommended this court issue a writ of mandamus because there was no medical evidence which related the requested surgery to the allowed condition in Banks' claim, that being aggravation of pre-existing osteoarthritis of both knees.

{¶ 39} The facts here are markedly different.  Claimant's claim is specifically allowed for rotator cuff tear.  The medical evidence on which the commission relied states that the requested surgery is specifically to repair the torn rotator cuff.  Further, as Dr. Tonnies explains, given the severity of the tear and the underlying degenerative condition of claimant's shoulder, the ordinary method of repairing a torn rotator cuff will not be sufficient; instead, due to the underlying degenerative condition, claimant requires a reverse total shoulder arthroplasty.  The reality is that employers take their employees as they find them.  Here, claimant had underlying problems with her shoulder.  None of those underlying problems are allowed in her claim; however, their presence cannot be used to deny the surgery where Dr. Tonnies indicates the requested surgery is necessary to treat the allowed conditions.  Because of those underlying problems, the normal surgical procedure utilized to repair her allowed condition of torn rotator cuff would be insufficient.  As such, Dr. Tonnies opined that claimant needed a more involved surgical procedure to correct the allowed condition of torn right rotator cuff.  This constitutes some evidence supporting the commission's decision.

{¶ 40} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated the commission abused its discretion when it authorized the requested surgery, and this court should deny relator's request for a writ of mandamus.


/S/ MAGISTRATE
STEPHANIE BISCA


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).