[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Omni Manor, Inc. v. Indus. Comm.*, Slip Opinion No. 2020-Ohio-4422.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4422

THE STATE EX REL. OMNI MANOR, INC., APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Omni Manor, Inc. v. Indus. Comm.*, Slip Opinion No. 2020-Ohio-4422.]

*Workers' compensation—Industrial Commission properly authorizes medical services if (1) the services are reasonably related to an allowed condition, (2) the services are reasonably necessary for treatment of an allowed condition, and (3) the cost of the services is medically reasonable—Court of appeals' judgment affirmed.*

(No. 2019-1134—Submitted June 2, 2020—Decided September 16, 2020.)

APPEAL from the Court of Appeals for Franklin County, No. 17AP-725, 2019-Ohio-2521.

_____

**Per Curiam.**

{¶ 1} Appellant, Omni Manor, Inc., asked the Tenth District Court of Appeals for a writ of mandamus ordering appellee Industrial Commission to vacate an award of medical-service reimbursement to appellee Diana Garringer for a right reverse total-shoulder arthroplasty. The Tenth District denied the writ. Omni Manor asks this court to reverse that judgment. It also requests oral argument. We affirm the Tenth District's judgment denying the writ, and we deny Omni Manor's motion for oral argument.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In April 2016, while working as a housekeeper for Omni Manor, Garringer injured her right shoulder helping a coworker lift a couch. Her workers' compensation claim was initially allowed for right-shoulder sprain. Garringer moved to add right-shoulder rotator-cuff tear as an allowed condition. Omni Manor opposed the request, asserting that the torn rotator-cuff was the result of a degenerative condition and predated Garringer's work injury. The commission disagreed and granted the request to add rotator-cuff tear as an allowed condition. Omni Manor did not exercise its right to appeal that decision to the court of common pleas under R.C. 4123.512(A).

{¶ 3} In August 2016, Garringer filed a "C-9 form" containing a request for medical-service reimbursement for a reverse total-shoulder arthroplasty, based on medical reports by Dr. Robert Piston and Dr. David Tonnies.[1] Dr. Piston's report described the results of an MRI of Garringer's right shoulder, which showed several rotator-cuff tears as well as some atrophy of the muscle fibers.

{¶ 4} Dr. Tonnies's report noted that x-rays had shown degenerative changes and that the MRI showed both a "massive rotator cuff tear" and evidence of muscle atrophy. He made three diagnoses: right-shoulder rotator-cuff tear, right-

---

1. Arthroplasty means "plastic surgery of a joint" or "the operative formation or restoration of a joint." *Webster's Third New International Dictionary* 123 (2002).

shoulder degenerative joint disease, and right-shoulder rotator-cuff arthropathy.[2] Of those three conditions, only the rotator-cuff tear was an allowed condition in Garringer's workers' compensation claim. Dr. Tonnies concluded, "The patient has a massive tear of the rotator cuff with retraction. The patient already has muscle atrophy. A primary repair of the rotator cuff is unlikely at this time secondary to the degree of involvement. Her best option would be that of a reverse total shoulder arthroplasty."

{¶ 5} In May 2017, Omni Manor referred Garringer for an independent medical examination by Dr. Oscar Sterle. Dr. Sterle noted that Garringer suffered from a right-shoulder rotator-cuff tear as well as degenerative conditions affecting her right shoulder. He agreed that the rotator-cuff tear "was deemed to be irreparable, with arthritis of the glenohumeral joint (ball and socket)." Yet he opined that the recommended reverse total-shoulder arthroplasty was not medically necessary and not appropriate to treat the allowed conditions, was not reasonably related to Garringer's industrial injury, and was instead appropriate for treating her preexisting degenerative conditions. However, Dr. Sterle also stated his belief that Garringer's rotator-cuff tears were also preexisting and degenerative and not the result of her work injury—an issue that the commission had already decided to the contrary when it approved right-shoulder rotator-cuff tear as an allowed condition.

{¶ 6} In August 2017, the commission granted Garringer's reimbursement request. The commission concluded, based on Dr. Tonnies's C-9 form and medical report, that a reverse total-shoulder arthroplasty was "reasonably related to and reasonably necessary for the treatment of the allowed conditions."

{¶ 7} Omni Manor asked the Tenth District Court of Appeals to issue a writ of mandamus ordering the commission to vacate its order granting Garringer's reimbursement request. A magistrate recommended that the Tenth District deny

---

2. Arthropathy simply means "a disease of a joint." *Webster's Third New International Dictionary* 123 (2002).

the writ. 2019-Ohio-2521, ¶ 2. Omni Manor objected, arguing that Dr. Tonnies's report and C-9 form did not constitute some evidence supporting the authorization of the reverse total-shoulder arthroplasty, *id*. at ¶ 9, and that the magistrate failed to analyze whether the arthroplasty was "independently required for an allowed condition," *id*. at ¶ 13, citing *State ex rel. Griffith v. Indus. Comm.*, 87 Ohio St.3d 154, 156, 718 N.E.2d 423 (1999). The court overruled Omni Manor's objections, found that the reverse total-shoulder arthroplasty was independently required for the rotator-cuff tear and denied the request for a writ of mandamus. *Id*. ¶ 13, 15. Omni Manor appealed.

{¶ 8} Omni Manor asserts two propositions of law: (1) the court of appeals erred when it failed to require Garringer to prove to the commission that the reverse total-shoulder arthroplasty was "independently required" before the commission allowed the condition of right-shoulder rotator-cuff tear and (2) the court of appeals erred when it found that Dr. Tonnies's "equivocal" report constituted some evidence in support of the commission's determination to authorize treatment. Omni Manor has filed a motion for oral argument on these propositions; no responses were filed.

## II. ANALYSIS

### A. *Mandamus Standard*

{¶ 9} Mandamus relief is appropriate only if the relator establishes "a clear legal right to the relief requested, a clear legal duty on the part of the commission * * * to provide the relief, and the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Baker v. Indus. Comm.*, 143 Ohio St.3d 56, 2015-Ohio-1191, 34 N.E.3d 104, ¶ 12. In matters before it, the commission is the exclusive evaluator of the weight and credibility of the evidence. *State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 287, 725 N.E.2d 639 (2000). Therefore, "[t]o be entitled to an extraordinary remedy in mandamus, the relator must demonstrate that the [commission] abused its discretion by entering an order not supported by

any evidence in the record." *State ex rel. WFAL Constr. v. Buehrer*, 144 Ohio St.3d 21, 2015-Ohio-2305, 40 N.E.3d 1079, ¶ 12.  The relator must make that showing by clear and convincing evidence.  *Id.*

### B.  Arguments of the Parties

{¶ 10} The question before us is whether the commission abused its discretion when it granted Garringer's request for medical-service reimbursement. We have held that the commission properly authorizes requested medical services when (1) the services are reasonably related to an allowed condition, (2) the services are reasonably necessary for treatment of an allowed condition, and (3) the cost of the services is medically reasonable.  *State ex rel. Miller v. Indus. Comm.*, 71 Ohio St.3d 229, 232, 643 N.E.2d 113 (1994).  Omni Manor argues that Dr. Tonnies's report and C-9 form failed to show that the requested services are reasonably related to an allowed condition.

{¶ 11} Omni Manor's primary argument, however, is that when an injured worker suffers from both allowed and contributing nonallowed conditions, the criteria in the *Miller* test alone are insufficient for establishing medical-service reimbursement and the injured worker must also establish that the requested treatment is "independently required for an allowed condition."  Omni Manor asserts that this additional requirement is imposed by our opinions in *Griffith*, 87 Ohio St.3d 154, 718 N.E.2d 423, and *State ex rel. Jackson Tube Serv., Inc. v. Indus. Comm.*, 99 Ohio St.3d 1, 2003-Ohio-2259, 788 N.E.2d 625.  It further argues that to meet the requirement, Garringer was required to show that the reverse total-shoulder arthroplasty would have been necessary to treat an allowed condition even in the absence of the nonallowed conditions.  Omni Manor contends that the record does not contain any evidence satisfying the additional requirement.  Finally, Omni Manor contends that Dr. Tonnies's report is equivocal, and was therefore not proper evidence that could support the commission's decision.

{¶ 12} The commission argues that Dr. Tonnies's report is not equivocal and that it establishes the requisite causal connection between the reverse total-shoulder arthroplasty and the work injury because that surgery is the only effective treatment for Garringer's allowed rotator-cuff tear. Garringer adds that Omni Manor's position means that she would be entitled to either the standard rotator-cuff-tear surgery—which both Drs. Tonnies and Sterle agree would not be successful in this case—or no surgery at all to treat her work injury. She argues that her evidence satisfies the *Miller* test and that Omni Manor's suggestion that she must prove that the allowed condition is the "one and only reason" for the requested surgery would place upon her a greater burden than the law requires.

### C. The Miller *Test Is the Applicable Test*

{¶ 13} Medical-service-reimbursement claims that are contested between an injured worker and a self-insuring employer are adjudicated by the commission. R.C. 4123.511(B)(3) and (C). In making those determinations, the commission applies the standard set forth in *Miller*, 71 Ohio St.3d at 232, 643 N.E.2d 113.

### 1. *Miller*

{¶ 14} In *Miller*, the injured worker suffered from obesity prior to injuring her back at work. *Id*. at 229, 231. Four years after her injury, she requested the commission's approval to enroll in a supervised weight-loss program. *Id*. The commission denied the request because obesity was not an allowed condition in the claim, and the Tenth District upheld that decision. *Id*. at 230-231. On appeal, this court first noted that other states had found treatments for obesity to be compensable in workers' compensation claims when the treatments were curative and not merely palliative, i.e., the treatment would actually improve the allowed condition, not merely relieve pain associated with it. *Id*. at 232. We then explained that preexisting obesity itself could never be an allowed condition, because it is not limited to a particular body part and lacks the requisite causal relationship to a work injury. *Id*. at 233. But, we held that although the claimant's obesity was (a)

6

preexisting and (b) not an allowed condition, a specialized weight-loss program to treat the obesity could be a reimbursable medical expense and that "[t]he requisite causal relationship question * * * is to be addressed by the three-step test" set forth above. *Id.* at 233-234.

{¶ 15} The commission subsequently incorporated the three *Miller* criteria into its regulation governing approval of medical-service-reimbursement requests. Ohio Adm.Code 4123-6-16.2(B). However, the Tenth District has continued to refer to the standard as "the *Miller* test." *See*, *e.g.*, *State ex rel. Cleveland Clinic Found. v. Indus. Comm.*, 10th Dist. Franklin No. 10AP-329, 2011-Ohio-2269, ¶ 27-28; *State ex rel. Cassens Transport Co. v. Indus. Comm.*, 10th Dist. Franklin No. 11AP-680, 2012-Ohio-4829, ¶ 8.

{¶ 16} Omni Manor argues that that in *Griffith*, 87 Ohio St.3d 154, 718 N.E.2d 423, we essentially altered or augmented the *Miller* test for cases involving contributing nonallowed conditions, requiring claimants in those cases to show that the requested medical treatment would be required even in the absence of the nonallowed condition, and that we reiterated this new test in *Jackson Tube*, 99 Ohio St.3d 1, 2003-Ohio-2259, 788 N.E.2d 625. Omni Manor misreads our opinions in those cases.

### 2. *Griffith*

{¶ 17} *Griffith*, 87 Ohio St.3d 154, 718 N.E.2d 423, was not a medical-service-reimbursement case and did not involve an application of the *Miller* test. Instead, *Griffith* involved a request for temporary-total-disability ("TTD") compensation for a period of disability caused by the injured worker's need to recover from knee surgery. *Id.* at 154-155. The self-insured employer had both approved and paid for the surgery based on the treating physician's certification that the procedure was to treat the injured worker's allowed conditions—contusion and meniscus tear. *Id.* at 155. However, the physician's reports on the day of surgery stated that degenerative arthritis, a nonallowed condition, was the reason

for the procedure. *Id.* This led the commission to deny the request for TTD compensation: because the surgery was not for an allowed condition, the period of disability caused by the surgery did not result from the industrial injury. *Id.*

{¶ 18} Before this court, the injured worker argued that the employer had *implicitly* certified her arthritis as an allowed condition by approving the knee surgery with the knowledge that she also suffered from nonallowed arthritis in her knee. *Id.* at 156. Our response to that argument forms the basis of Omni Manor's argument in this case.

{¶ 19} In rejecting the notion that the employer had implicitly allowed the arthritic condition by approving the knee surgery, we first took note of the treating physician's statement that while early arthritic changes were present in the knee, they " 'would really not [have] chang[ed] the fact that she [was] having enough trouble for arthroscopic procedure.' " (Brackets sic.) *Id.* Therefore, we said, "The court of appeals reasonably concluded that even *with* the accompanying nonallowed arthritic condition, this statement suggested that the allowed knee condition, by itself, necessitated the planned surgery." (Emphasis added.) *Id.* We then stated:

> And since the existence of a contributing nonallowed condition is not a legitimate reason for refusing to pay for medical treatment independently required for an allowed condition, *State ex rel. Waddle v. Indus. Comm.* (1993), 67 Ohio St.3d 452, 457, 619 N.E.2d 1018, 1021, approval of the surgery in reliance on the letter would not imply acceptance of a new condition.

*Id.* at 156-157. We concluded, "The court of appeals correctly found that some evidence supported the commission's denial of TTD." *Id.* at 157.

{¶ 20} Because *Griffith* was a TTD-compensation case, not a medical-service-reimbursement case, the issue whether the commission had abused its discretion by authorizing medical services was not before us. We did not mention, let alone apply, the *Miller* test. *See Griffith*, 87 Ohio St.3d at 154-157, 718 N.E.2d 423. The statement we quoted above merely explained that the employer did not face a choice between rejecting the surgery or implicitly allowing a nonallowed condition—i.e., the nonallowed condition was irrelevant as long as the surgery was properly approved for the allowed condition. Our citation to *Waddle* demonstrates this intent: *Waddle* was a permanent-total-disability-compensation case that, like *Griffith*, did not involve an application of the *Miller* test. *Waddle* at 455, 457. Indeed, *Waddle* is often cited for the concept that nonallowed conditions cannot be used to advance or defeat a claim for compensation. *See id.*

{¶ 21} Moreover, the "independently required" standard that Omni Manor argues *Griffith* created for cases involving contributing nonallowed conditions would be inconsistent with the underlying *Miller* test. Omni Manor argues that *Griffith* requires claimants in such cases to show that the requested medical services would be required even if the nonallowed conditions did not exist. But the *Miller* test does not obligate a claimant to show that the requested medical services are *required*—only that they are "*reasonably related* to" and "*reasonably necessary for treatment of*" an allowed condition. (Emphasis added.) *Miller*, 71 Ohio St.3d at 232, 643 N.E.2d 113. This inconsistency is not addressed in *Griffith*, because we intended no such modification of the *Miller* test.

{¶ 22} Given the issue that we were deciding in *Griffith*, our statement must be read as one couched in the context of the existing medical-service-reimbursement framework rather than as a significant yet undiscussed alteration of that framework. Accordingly, the phrase "independently required for an allowed condition," *id.* at 156, may be stated another way as "satisfying the *Miller* test as to the allowed condition."

### 3. *Jackson Tube*

{¶ 23} Our holding in *Jackson Tube*, 99 Ohio St.3d 1, 2003-Ohio-2259, 788 N.E.2d 625, which *was* a medical-service-reimbursement case, underscores this conclusion. In that case, the injured worker's allowed condition was a rotator-cuff tear, but the treating physician believed that there was additional—but unknown—pathology in the shoulder related to the industrial injury. *Id.* at ¶ 1-8. The doctor opined that the only way to discover what, if any, additional shoulder problems existed was to perform an arthroscopic surgery, during which he would repair the rotator-cuff tear and use a camera to diagnose any additional conditions. *Id.* The commission authorized the surgery. *Id.* at ¶ 13. The employer objected to paying for a surgery to diagnose nonallowed conditions. *Id.* at ¶ 14-17, 22. The Tenth District found that the *Miller* test was satisfied and that the commission had not abused its discretion. *Id.* at ¶ 19.

{¶ 24} In affirming the Tenth District's decision, we distinguished *Griffith*, 87 Ohio St.3d 154, 718 N.E.2d 423, as "deal[ing] primarily with nonallowed conditions and TTC [temporary-total-disability compensation], not medical treatment." *Id.* at ¶ 26. Moreover, we pointed out that *Griffith* actually hurt the employer's case, because *Griffith* noted that " 'the existence of a contributing nonallowed condition is not a legitimate reason for refusing to pay for medical treatment independently required for an allowed condition," *id.*, quoting *Griffith* at 156, and that the injured worker's doctor had "always listed the allowed condition of torn rotator cuff as requiring surgery, despite whatever other potential conditions were contemplated," *id.* We then concluded that "the commission did not abuse its discretion in applying *Miller*[, 71 Ohio St.3d 229, 643 N.E.2d 113,] and authorizing surgery." *Id.* Neither *Griffith* nor *Jackson Tube* altered the *Miller* test in cases involving contributing nonallowed conditions.

### D. *The Commission Did Not Abuse Its Discretion*
### 1. **Application of the *Miller* Test**

{¶ 25} As we have stated, under *Miller*, the commission properly authorizes medical services if (1) the services are reasonably related to an allowed condition, (2) the services are reasonably necessary for treatment of an allowed condition, and (3) the cost of the services is medically reasonable. *Id*. at 232.

{¶ 26} Omni Manor argues that Dr. Tonnies's report and C-9 form did not constitute some evidence that the reverse total-shoulder arthroplasty was reasonably related to the allowed condition of right-shoulder rotator-cuff tear. In support of this argument, Omni Manor cites the Tenth District's decision in *Cleveland Clinic Found.*, 10th Dist. Franklin No. 10AP-329, 2011-Ohio-2269.

{¶ 27} In *Cleveland Clinic Found.*, the relevant allowed condition was aggravation of preexisting osteoarthritis in both of the claimant's knees, resulting from a fall. *Id*. at ¶ 1, 6. The claimant was therefore required to show that the requested medical service—a total knee arthroplasty—was reasonably related to the *aggravation* of the preexisting condition by the industrial injury, not merely to the preexisting condition itself. *Id*. at ¶ 25, 28, 39. But the physician's report on which the commission had relied did not mention aggravation. *Id*. at ¶ 11, 29-31. It instead referred only to the claimant's preexisting, nonallowed degenerative conditions. *Id*. And the C-9 form included only the injury code for the preexisting condition, not the code for aggravation of that condition. *Id*. at ¶ 32-33.

{¶ 28} Here, by contrast, the relevant allowed condition is rotator-cuff tear, not aggravation of a preexisting degenerative condition. And in sharp contrast to the medical report in *Cleveland Clinic Found.*, Dr. Tonnies's report directly refers to the allowed condition—the "massive rotator-cuff tear"—and then concludes that a reverse total-shoulder arthroplasty is the best option to treat it. Additionally, the August 2016 C-9 form states that the treating diagnosis is "[right] shoulder RCT" and that the service requested is "[r]everse total shoulder arthroplasty." This was

evidence from which the commission could conclude that the reasonably related requirement was satisfied.

## 2. Equivocal Evidence

{¶ 29} "[E]quivocal medical opinions are not evidence." *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649, 657, 640 N.E.2d 815 (1994). "[E]quivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement." *Id.* Omni Manor argues that Dr. Tonnies's report and C-9 form are equivocal and therefore not proper evidence. We disagree.

{¶ 30} Dr. Tonnies's report stated, "The patient has a massive tear of the rotator cuff with retraction. The patient already has muscle atrophy. A primary repair of the rotator cuff is unlikely at this time secondary to the degree of involvement. Her best option would be that of a reverse total shoulder arthroplasty." Taking this statement together with the C-9 form listing rotator-cuff tear as the diagnosis and a reverse total-shoulder arthroplasty as the requested treatment, we find no ambiguity, contradiction, or uncertainty: Dr. Tonnies believes that a primary repair of Garringer's torn rotator cuff would not be successful and that a reverse total-shoulder arthroplasty would be the best option to treat it. The commission did not abuse its discretion by relying on this evidence.

## III. ORAL ARGUMENT

{¶ 31} Omni Manor has filed an unopposed motion for oral argument. In a direct appeal such as this, granting a request for oral argument is subject to this court's discretion. S.Ct.Prac.R. 17.02(A). In exercising that discretion, we consider whether the case involves (1) a matter of great public importance, (2) complex issues of law or fact, (3) a substantial constitutional issue, or (4) a conflict among courts of appeals. *See State ex rel. BF Goodrich Co., Specialty Chems. Div. v. Indus. Comm.*, 148 Ohio St.3d 212, 2016-Ohio-7988, 69 N.E.3d 728, ¶ 23.

**{¶ 32}** Omni Manor argues that we should hear oral argument because this case involves a matter of great public importance and complex issues of law and fact. Specifically, it argues that because Ohio's workforce is aging, the state's employees are increasingly likely to have preexisting conditions that could result in self-insured employers having to pay for expensive total-joint replacements. It argues that "the looming issues created by an aging workforce with degenerative conditions as that reality meets the somewhat artificial nature of workers' compensation's statutory framework" make this a case of great public importance. It seeks oral argument to help in "finding a sensible analytical framework" for cases in which the treatment is "aggressive and expensive." Finally, it notes that the opportunity is ripe for us to clarify our holding in *Griffith*, 87 Ohio St.3d 154, 718 N.E.2d 423.

**{¶ 33}** Omni Manor's concern about the impact of an aging workforce on Ohio's employers is not a factor under *Miller*, 71 Ohio St.3d 229, 643 N.E.2d 113, and is, at bottom, a policy concern better addressed by the General Assembly. Moreover, Omni Manor has had ample opportunity to explain its interpretation of *Griffith* in its briefs. We deny the motion for oral argument.

## IV. CONCLUSION

**{¶ 34}** For these reasons, we affirm the judgment of the court of appeals and deny the motion for oral argument.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

FRENCH, J., not participating.

_____

Manchester, Newman & Bennett, L.P.A., and Thomas F. Hull II, for appellant.

Dave Yost, Attorney General, and Kevin J. Reis, Assistant Attorney General, for appellee Industrial Commission of Ohio.

Green, Haines, Sgambati Co., L.P.A., and Shawn D. Scharf, for appellee Diana Garringer.

_____